# Young *against* White.

A contract to "have a boat ready for the spring trade on the 1st of March ensuing, and, on failure, to pay 10 dollars damages for every day after that time until the boat is ready," is a covenant that it shall be ready *on* the 1st of March ensuing, *for* the spring trade; and although it could not have been then used for that purpose, the stipulated damages. are recoverable.

No presumption arises that the performance of the written contract was waived by him or its terms altered, from the fact, that the person for whom the work was being performed was present, and saw it executed.

ERROR to the district court of *Alleghany* county.

This action is brought upon a contract for building a canal boat, by Thomas Young against James P. White.

The article of agreement being duly proved was given in evidence, as follows:

"Memorandum of an agreement entered into, on the 8th of September A. D. 1834, by and between Thomas Young, of the one part, and James P. White, of the other, both of the county of Cambria, and state of Pennsylvania. Witnesseth, that the said Young, doth agree to find all materials and to build and construct a Pennsylvania canal boat, at the basin in Johnstown, of such a description, as the Lafayette or Commodore Perry, of Leech's line; to be done in a workmanlike manner, and of good and substantial materials; plank on the hull to be of a sufficient length and thickness, and to have two coats of white lead, and one fender, well ironed. The deck and siding to be of good white pine, well seasoned; the siding and doors to be pannelled and painted yellow, and the blinds of the windows green; the boat to be finished in every respect, ready for running, except the inside, to which nothing is to be done. Steps made to get in and out of the boat. The said Young doth agree to have the said boat ready for the spring trade, on the 1st of March ensuing, and in failure whereof, he agrees to pay ten dollars damages for every day after that time until the boat is ready.

"In consideration whereof, the said White doth agree to pay for said boat, the sum of 750 dollars, as follows; 100 dollars as soon as the boat is ready for planking, and 100 dollars as soon as the carlings are on, and 200 dollars against the 1st of March; the balance to be paid in four equal monthly payments."

The plaintiff admitted that 487 dollars and 50 cents had been

paid on the contract, and claimed a balance of 262 dollars and 50 cents, remaining due to him.

The defendant then called witnesses, who testified, that the canal boat did not correspond with the sample, according to which it was to have been built. That the material was too light, and was green stuff; that there was no breast hook in her; that the front grub beam was too light; that there was but one clamp, and that too light and spliced in the middle; that two of the timbers were broken in planking; that the whaleing streaks were too light; that when she was launched she drew six inches more water at the stern than at the bow, and after being loaded with her first load she was sprung as much as eight inches from bow to stern; that the fenders were lighter than those of the sample, being two inches by three, instead of three inches by four; that the bilge plank were too thin; that the boat leaked very much in the hull and deck; that there was no whaleing and no bilge planks; that the fettocks were much split at the head by driving the spikes through them, in fastening on the plank. Two witnesses testified, that they considered the difference in value, between this boat and the sample, 250 dollars; that the boat was launched on the 21st of March 1835; that when the plaintiff's hands were working at the deck stuff defendant came along and asked plaintiff if the stuff was perfectly dry, and was answered that it was. Witness says it was not. One witness heard defendant complain to Young that the clamps were split, and were one and a half inch, instead of two inch plank, and that they were spliced instead of running from one grub beam to another.

The plaintiff then called witnesses, who testified, that the material was as dry as was usually put on other boats; that the boat was well caulked in hull and on deck; that White was present at the time the boat was launched, and took possession of her; that there was fender iron of the usual size; stem iron and rudder iron was put on the boat; that Captain White assisted at the launching of the boat; the defendant lived in Johnstown, where the said boat was built; he was frequently at the boat yard watching the progress of his boat, and no complaints were heard by the witnesses relative to the manner in which they were doing the work, except the one above mentioned, relative to the clamps; that it is not uncommon for fettocks to be split at the head, and that it is no material injury; that the canal opened, and the first boats left Johnstown that season, on the 17th of March; that it was a week or ten days after that before merchandise from the east arrived at Johnstown. The witnesses differed as to whether the clamps should be considered inside work or part of the hull. The defendant had hands at work at the inside of the boat during the time that the plaintiff was working at the hull of the said boat, and a considerable time before she was finished or delivered by the plaintiff; that it was not uncommon for planks to splinter at the bend in planking.

[Young v. White.]

The opinion of the court was expressed in the following charge to the jury.

GRIER, President.—There are two distinct questions proposed for your consideration.

Did the plaintiff deliver such a boat as he contracted to deliver? He has no more right to compel the defendant to pay full value for a boat of inferior quality to that contracted for, than the defendant has to insist on paying the plaintiff in counterfeit money.

The acceptance of the boat and payment of such a portion of the price contracted for, as defendant thought was the value, does not stop him from setting up this defence to the payment of the residue of the money.

Nor is the fact that the defendant lived in the same place where the boat was built, and did not interfere while the boat was building, if it were true, sufficient for you to presume that he agreed to such alterations as were made for the worse. It would be of little use to put contracts in writing if such loose presumptions were allowed by courts or juries, to vary or annul them.

Your first consideration will be: did the plaintiff fulfil his contract? Did he build the boat equal to the sample agreed upon? if not, what is a proper deduction from the price?

Another point will then claim your attention; by the contract this boat was to be delivered at a certain time—the 1st of March—and the parties have agreed that the sum of 10 dollars per day should be paid as stipulated damages for every day after that till she was delivered.

The witnesses all agree that she was not delivered till the 21st of March.

Defendant's counsel contends that by the contract the liquidated damages were not to be paid unless the canal was open for the spring trade, or only from that time, and that the canal was not open till the 17th of March. The contract is, that plaintiff shall have the boat ready for the spring trade by the 1st of March, and shall pay 10 dollars for every day, &c.

It is plain that the 1st of March is the time set by the parties, and "ready for the spring trade," *the manner*. Test this construction by a different state of facts; suppose the canal opened and spring had commenced on the 1st of February, and defendant insisted on his damages from that time; would not the plaintiff justly say—I did not contract to have her ready for the spring trade on the 1st of February, but on the 1st of March? and if so, how can he now justly say, I did not contract to deliver on the 1st of March, but when the spring trade opened? Parties have a right to make their own contracts, and if they stipulated for certain liquidated damages in case of non performance, neither law nor equity will interfere to save the party whose negligence has made him liable to them. If the defendant has a right to his *pound* of flesh we must give it to him,

[Young v. White.]

Errors assigned.

1. The court erred in charging the jury that the plaintiff is answerable to the penalty of 10 dollars per day as liquidated damages for every day's delay in the completion of said boat after the first day of March.

2. The court erred in charging the jury that they had no right to infer from the acts of the parties, that the variations from the written agreement in the completion of said boat, were made by the consent of both parties, that written contracts could not be varied by such presumptions.

3. The court erred in entering judgment on the verdict in favour of the defendant.

*Lowrie,* for plaintiff in error.
*Shaler,* for defendant in error.

The opinion of the Court was delivered by

SERGEANT, J. The proper construction of the words in question, would seem to be that which was given by the court below. " The said Young doth agree to have the said boat ready for the spring trade, on the 1st of March ensuing, and on failure whereof he agrees to pay 10 dollars damages for every day after that time, until the boat is ready." This, according to the literal construction, is a covenant that the boat shall be ready *on* the 1st of March ensuing—*for* the spring trade. The former fixes the time—the latter describes the purpose for which she is to be employed. Were we to construe it as contended for, that the opening of the spring trade was the time contemplated, then no certain time would be fixed; for it would depend on the weather, and the preparations by the state for opening the navigation. Neither party would know beforehand when the contract was to be performed, so as to be mutually executed, by delivery of the boat and payment of the money; whereas the damages are given to secure the performance by a certain *time*; and no other time is mentioned but the 1st of March. It was very important to the defendant that there should be a fixed period when he should receive the boat, in order that he might equip and fit her for the spring trade, which could not, strictly speaking, commence earlier than the 1st of March, and usually begins in the course of that month, though sometimes longer delayed by accidental circumstances.

Judgment affirmed.