## Powell *versus* Burroughs *et al.*

1. In a lease of a coal-mine, the lessee stipulated that he would pay a rent for coal taken out and also mine a certain number of tons annually. *Held*, that settlements for coal taken out, were not as matter of law a discharge of a breach in not taking out the stipulated quantity.

2. The covenant for rent for coal mined, was distinct from the covenant to mine a certain quantity.

3. Two mines belonging to the same lessors, the one contiguous to the other, were leased by two leases to one lessee. One stipulation in each lease was that the lessee was not bound to mine more coal than could be taken away by cars furnished by a railroad company named. It was no excuse for not working one mine that the cars furnished, were not sufficient to take away the coal mined in the other.

4. That the coal which the lessee failed to take out according to his covenant, was of greater value to the lessor at the end of the lease than if it had been taken out, is not a ground for reducing the claim for the breach to nominal damages.

5. The rent per ton agreed for was stipulated damages to the extent of the non-performance.

6. The uncertainty as to the extent of the injury, is a criterion to determine whether it is a penalty or liquidated damages.

February 15th 1867. Before WOODWARD, C. J., THOMPSON, STRONG and READ, JJ. AGNEW, J., at Nisi Prius.

Error to the District Court of *Philadelphia*.

This was an action of covenant to September Term 1865, by H. N. Burroughs, W. P. Orbison and W. Dorrance, Jr., against Robert H. Powell, to recover rent.

On the 22d of February 1860, the plaintiffs leased to the defendant the right to mine and take away coal from their mines, called the "Barnet Coalbank," in Huntingdon county, from the 29th of that month until the 31st of December 1864, the defendant reserving the right to terminate the lease on the 31st of December or in any year thereafter on three months' notice, and to pay 20 cents per ton of 2240 lbs. for all the coal mined and carried away, the defendant, on the 8th of the next April and on the 8th of each succeeding month to give his promissory note, payable in ninety days, for the amount of the coal taken by him during the preceding month; he also bound himself to mine at least 33,334 tons of 2000 lbs. before the 1st of January following, and thereafter 40,000 tons per annum during the lease, provided by all proper means the mines will produce so much. "But if he shall not use the necessary means, efforts and exertion in working said mine or vein of coal, and shall, in consequence thereof, fail to mine and take away the said quantity, he shall, notwithstanding, pay to the said party of the first part the same amount of rent as if he had mined and taken away the quantity of coal as before specified. If the amount stipulated annually to be taken out be not taken out, under circumstances which will not excuse the said lessee from doing so, and which will require

him to pay the rent therefor, he shall have the privilege of taking out the deficiency in the rent of any succeeding year of this lease, without again paying rental for the same; said deficiency not to be computed as part of the amount required to be taken out by the lessee in the succeeding year." It was further stipulated that if the Huntingdon and Broad Top Railroad Company did not furnish cars, so that the lessee could not take away the quantity specified in the times specified, there should be a proportionate abatement of rent, unless he should have failed to use proper diligence to procure or be in other default with regard to them. It was also stipulated that the lessee should not be compelled to go to an expense unusual in the ordinary process of mining. There were numerous other covenants in the lease not bearing on the questions arising in this case.

On the 25th of March 1862, the plaintiffs made another lease to the defendant of the right, &c., of "mining and taking away coal from the new opening on the tract of land owned, &c. * * * called the Burroughs vein, the same being about 75 feet under the Barnet vein on said tract, until the 31st of December 1864, reserving a rent of 20 cents per ton of 2240 lbs., to be secured and paid in the same manner as is provided in a lease between same parties, dated the 22d day of February 1860, the rent to be ascertained as therein provided.

"This lease to be subject to all the provisions contained in the said former lease; so far as applicable, with like effect as though the same had been incorporated in this one, with this exception, that the said party of the second part shall not be required to take out of the Burroughs' vein more than 12,000 net tons during 1862, 25,000 net tons during 1863, and 30,000 net tons during 1864."

The plaintiffs in their declaration averred that the defendant did not mine and carry away the amount of coal stipulated for in the years 1862, 1863 and 1864, and pay for the coal at the rate mentioned in the lease.

The defendant pleaded: 1. That he could not get out the quantity of coal stipulated for, because the railroad company, without any default on his part, did not furnish cars; that under the rules of the railroad company a certain number of cars only could be obtained for any one colliery. 2. That all the cars that could be obtained for the Barnet and Burroughs collieries were used for the Barnet colliery, and that there was therefore a greater quantity of coal taken from that colliery than could have been taken from both collieries if all the cars had been divided between them, and that there consequently became due for the rent of the one colliery more rent than if both had been worked and all the cars which could be obtained had been used to carry it away. 3. That by reason of the railroad company

[Powell *v.* Burroughs.]

neglecting to furnish cars, he could not mine and take away coal "except at a cost and expense unusual in the ordinary process of mining." 4. That by the contract between the parties, it was stipulated that the defendant should not be obliged to pay more to miners than he was paying at the making of the contract; that such stipulation was intended by both parties to be put into the agreement, and that he executed the lease supposing it to have been inserted, and that it was impossible, by reason of the failure of the company to furnish cars and of the land being more difficult to work, to obtain miners, unless at a higher rate than he was paying at his own mines, and that he was therefore excused from paying the rent. 5. That the coal which he would have mined remained in the land, which was therefore increased in value above what it would have been had the coal been mined, and he was therefore liable only to nominal damages. 6. That he held the Barnet mine at a better rent than the Borroughs mine; and that the Barnet mine was capable of employing more miners than could mine in it and in the Burroughs mine; all the coal was mined which could be carried away by the cars furnished; and, alleging also matters in the other pleas, averred that he was excused from performing his covenants.

Much evidence was given by the defendant in support of his pleas.

He also submitted the following points:—

1. If the plaintiffs, or any of them, dispensed with the working of the Burroughs vein, they cannot recover for any failure to mine after that event.

2. The facts which existed and continued at the time of such dispensation, are sufficient grounds for the waiver of the past non-performance up to that time.

3. Settlements at the end of the year, for the rent of the past year, without an exaction of the rent for coal taken out, taken in connection with the stipulation in the 3d clause of the lease in reference to the right to mine such coal in any subsequent year, are a discharge from all liability for rent on coal taken out at that time.

4. If the failure to mine was caused by the neglect, refusal or failure of the Huntingdon and Broad Top Railroad Company to furnish cars to carry away the coal, and this failure was not caused by the default of the defendant, then the defendant is excused from his covenants to mine and pay rent.

5. If the jury believe that these two mines—the Burroughs and the Barnet—were counted in the distribution of cars as *one*, and there was an insufficiency of cars furnished to carry away the coal from the mines together, and all the coal was mined that could be got out with the cars furnished by the railroad company,

[Powell *v.* Burroughs.]

then the defendant is not liable for any rent upon coal not taken out.

6. If the defendant used all proper means, efforts and exertions to mine the coal from both or either mines, and could not by such means and the supply of cars furnished by the railroad company obtain more coal from both mines together than he did, then the plaintiffs cannot recover.

7. If every reasonable exertion was made by defendant to obtain miners, and no men could have been obtained by any exertions which a prudent miner could have made in his own case, and all the coal was got out from one or both mines that could have been by the efforts of such miners, then the defendant is not liable for the failure to mine more coal, nor liable to rent on that deficiency.

8. If all the means at the defendant's command to obtain coal from those two mines were employed on the Barnet vein, and thereby as much rent obtained and paid plaintiffs as if the means had been divided between the two mines, then the plaintiffs have no cause of action.

9. If, under the circumstances set forth in the 8th point, the court think there is a cause of action, the court is requested to instruct the jury that no more than nominal damages can be recovered.

10. If the jury believe that the coal in the mine was worth a greater rent at the termination of the defendant's lease than the defendant stipulated to be paid, then there can be no recovery beyond nominal damages.

The court (Stroud, J.) affirmed the 1st and 4th points and refused the others : and also charged the jury to examine each of the pleas and ascertain from the evidence whether or not the plea was sustained, and as, in this way, they should come to a conclusion, they should find their verdict on each issue.

The judge also said, " What would have been the use of putting in the claim for the Burroughs vein in the bill for rent, when both knew that it was not being worked ?"

The verdict was for the plaintiffs for $5514.81.

The defendant took a writ of error. His assignments were that the court erred :—

5. In refusing to affirm his 3d point.

6. In saying to the jury; " What would have been the use of putting in the claim on the Burroughs vein in the bill for rent, when both knew it was not being worked ?"

7, 8, 9, 10 and 11. In refusing to affirm the 5th, 6th, 8th, 9th and 10th points respectively.

*R. C. McMurtrie,* for plaintiff in error, cited Jegon *v.* Vivian, 1 Law Rep. 34 ; Lyon *v.* Miller, 12 Harris 392.

[Powell v. Burroughs.]

*G. Junkin, Jr.*, for defendant in error, cited Chitty on Contracts 339; 4 Burr. 2229; Young *v.* White, 5 Watts 460.

The opinion of the court was delivered, March 11th 1867, by

Thompson, J.—No argument has been submitted in support of the first three assignments of error, for the reason, as we learn from the defendant in error, and not denied, that the testimony of which they were predicated was eventually received; we must, therefore, treat them as abandoned. The matter constituting the 4th assignment, in which it is alleged the learned judge erred in not affirming, is insensible as it stands on the paper-book, and need not be noticed. Possibly some mistake may have occurred in framing this assignment.

The plaintiffs declared for a breach of the covenants in the lease of the Burroughs coal vein in their lands, dated the 20th of March 1862, and to continue to the 1st of June 1865. The principal breach was for the non-payment of rent, resulting from the failure to mine or raise the stipulated number of tons of coal each and every year during the continuance of the lease. To the counts containing the breaches, the defendant pleaded specially eleven distinct pleas, but on the trial withdrew five of them. The matters put in issue by the remaining pleas were,

1st. That owing to the default of the railroad company in not providing sufficient cars the defendant could not get out the stipulated number of tons.

2d. That there being two mines leased by the plaintiffs to the defendants, all the cars that could be obtained for both were used in one, by which a greater rent accrued to the plaintiffs than could have done if both had been worked.

3d. That defendant was only bound to mine so much coal as he could ship by the cars furnished, using due diligence and not incurring unusual expense, and that he did use such diligence, but for want of cars could not ship except at an unusual expense.

4th. That the coal remaining unmined at the end of the term, increased the value of the land beyond the amount demanded for rent.

5th. That the defendant was the plaintiffs' tenant of an adjoining mine yielding a better rent and which could furnish more coal than the cars to be had could carry; that he was not bound to mine coal excepting such as could be transported, and that by reason of insufficiency of cars, all the miners that could be employed in both mines were used in one, and if they or any of them had been employed in the other the production and rents would have been diminished; and that he used all efforts to obtain cars.

6th. An additional plea (the 12th), embodying in substance in one plea the whole of the foregoing and nothing else.

These pleas were all found against the defendant; and we are

[*Powell v. Burroughs.*]

now to determine how far the answers of the judge to the points of the defendant were applicable to the pleas, and whether they were rightly answered when applicable.

The 5th assignment is, that the learned judge refused to charge that a settlement for the rent of the past year, without exacting rent for coal not mined according to the terms of the lease, was a discharge from liability on the covenant to mine a certain number of tons per annum, or in default to mine to pay the rent as if mined. In other words that it was a release *pro tanto*. The learned judge refused to respond as requested, and we agree he was entirely right in doing so. It was quite too much to affirm as a conclusion of law, that settlements for coal taken out were a discharge of all liability for a breach of the contract to take out a defined number of tons. The covenant to pay rent for the coal mined and taken away, was distinct from the covenant to mine a certain number of tons. Receiving a stipulated sum for the one was not necessarily a release of the other. The 6th assignment of error is in the same category with the error just noticed. What is complained of in these errors was in fact not applicable to either of the pleas.

The 7th assignment is to the refusal of the learned judge to charge as requested in the defendants' 5th point, which was in substance, that if both the mines leased by the defendant from the plaintiffs were counted in the distribution of cars as one, and there was an insufficiency of cars to convey away the coal from both, and all the coal was mined from one that could be got away by the cars furnished by the railroad company, the defendant was not liable for any rent upon coal not taken out. The argument of the counsel for the plaintiff in error admits that the learned judge did instruct the jury, that if after proper exertions used to obtain cars were made by the defendant, and he failed, he would be excused. But the alleged error in the instruction was that the judge was of opinion, and told the jury, that the defendant had failed in his proof, because more men were not put to work in the Burroughs vein, so as to entitle it to its proportion as an independent mine, which it seemed to him it was. The accumulation of men in the one mine did not enlarge the proportion of cars of that mine. Whereas if the other had been actively worked it would have had its proportion of cars without regard to the proportions of the first. This, we understand, was substantially the instruction given, and as the bill of exception shows that the pleas were read to the jury with a reference of the facts applicable to them, we see no error in this treatment of such as were applicable to the 6th plea. The error of the argument is in confining the operations under these distinct leases as if there were but one lease and one coal-mine. Whereas the mines were distinct, although on the same land; and the leases were as distinct as if in different ownerships, having

different openings, gangways, car-stands and machinery, rendering different amounts of rent and under different covenants in one or more particulars. The learned judge held the defendant bound to make his exertions with reference to the covenants in the lease of the Burroughs vein, and it was referred to the jury to say whether he did or not. The whole effort of the defendant was to show that he could not get cars enough to carry all the coal from the Barnet mine. It is manifest he could not increase its proportion. His fault lay in not working the Burroughs vein so as to entitle him to its proportion according to the number of miners employed. As the leases were distinct, the lessee was bound to treat his covenants as distinct. He had no right to set up his own judgment and decide that it was better for the plaintiffs that all his forces should be applied to the Barnet mine, because it afforded the greatest facility for taking out coal. That was not his covenant and not a matter for him to determine, and the learned judge, we think, was right in keeping the covenants and performance under these leases entirely separate. These remarks are equally applicable to the 8th and 9th assignments of error.

The 10th and 11th assignments may be considered together. The one is an amplification of the other; or rather the latter is an explanation of the former, and is, " that if the jury believe that the coal in the mine was worth a greater rent at the termination of the defendant's lease than the defendant stipulated to pay, then there can be no recovery beyond nominal damages."

Had this instruction been granted it would have directly sustained the defendant's 10th plea. We are therefore to determine whether it was error to refuse it or not.

It can hardly be said that this plea was a ground of defence at law for a breach of the covenants sued on. It does not aver performance in any shape, nor does it show that it was contrary to law that it should be performed. If it be a plea at all, it is an equitable plea or defence. It says to the plaintiff, true it is I entered into the covenants for the breach of which I am sued, and did commit the breaches charged, but it was better for you that I did. You now get more for your coal than I agreed to give you. You are therefore entitled to nominal damages only. Such equity, it is apparent, rests not on any merit in the party claiming it, but arises exclusively in his bad faith in not regarding his covenants. There is no such principle in equity as this. If sanctioned it would be a panacea to heal every broken covenant where performance was stipulated for. The defendant had three alternatives, either of two of which would have relieved him from all damages: namely, the performance of his covenants as they were written, or showing that they were dispensed with by some inability to perform provided against in the lease; the third to terminate the lease at the end of any year, on giving the notice required,

and this would have released him from liability for any breach but for the past year. He chose to do neither, and now claims to show that he has done better for the plaintiffs by keeping their coal in place for a higher price. This policy, if taken in time and extended, might have covered the entire coal region, and but a single mine might have been worked. Competition thus set at defiance would undoubtedly be profitable to such a lessee, if, when called on to answer in damages to other lessors for broken covenants, he might successfully defend himself by showing that there were parties who had given, or were willing to give, higher prices for the unmined coal than he had contracted to give. If he could do this he might be fairly entitled to stand acquitted of damages and to have the credit of a discovery !

The defendant covenanted to take out of the Burroughs mine, leased in 1862, without any reference to any other mine or lease, so many tons per year, while the term lasted ; and on failure to take them out, to pay for the stipulated number taken or not taken. The number of tons to be taken or paid for was the moving consideration for the lease, and must be so regarded. It was, therefore, a clear case of stipulated damages in case of non-performance or non-performance *pro tanto*. The parties fixed it as the true measure of damages in case of failure, " without reference to the extent of the injury that might ensue by non-performance," and, so far as the covenant is concerned, are bound by it. The uncertainty as to the extent of the injury which may ensue is a criterion by which to determine whether it is a case of liquidated damages or a penalty : Chitty on Cont. 763, 766.

Pearson *v.* Williams, 26 Wend., is a case somewhat in point. A purchaser of certain city lots, in consideration of a conveyance of them for a certain sum of money, covenanted that he would, by a certain time mentioned, erect thereon two brick houses of specified dimensions, or in default pay on demand to the grantor $4000. It was held that this was a case of liquidated damages, it being evident that the covenant to erect the houses was part consideration for the sale. See also Daken *v.* Williams, 17 Wend. 447 ; and the same case 22 Id. 201. Perhaps more directly in point with the case before us is Young *v.* White, 5 Watts 460. There it was a contract to have a canal-boat built and ready for the spring trade—1st of March—or on a failure to pay $10 a day to the other party. This sum was held to be liquidated damages. The number of days during which there might be a failure was uncertain, hence the parties agreed on damages for each day. So here the number of tons which might be short of the number agreed to be taken out was also uncertain, and like the case of the boats the damages were fixed to meet the deficiency at so much per ton. These cases are hardly distinguishable in principle. But we forbear to enlarge ; we are of opinion that the defendant was

bound by his covenant to pay for the coal not mined so far as he was not released from the same. Seeing nothing to correct, the judgment is affirmed.