## JOHN T. KILLE v. READING IRON WORKS.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 4 OF PHILADELPHIA COUNTY.

Argued March 23, 1891—Decided April 13, 1891.

(a) In February, 1880, pending litigation as to rents payable under an ore-mining lease and as to damages to the lessee by eviction under a paramount title, the parties executed an agreement wherein it was provided that they should mutually release their claims against each other; and, on the part of the lessor, it was further agreed:

(b) That, if the lessor should again obtain possession of the ore lands, he should forthwith tender possession thereof to the lessee, and by covenant indorsed on the original lease extend the provisions thereof for the term of fifteen years from the time of such tender, the lessee covenanting to accept such tender and lease for the extended term.

(c) In October, 1884, the lessor purchased the paramount title of the ejectment plaintiffs, and proceeded to tender to his lessee the extension of the lease under the agreement of 1880. In the meantime, large quantities of ore had been mined out of the tract, by lessees under the paramount owners, and the property was otherwise deteriorated:

1. In such case, more than a reasonable time having elapsed before the purchase of the title and the tender under the agreement, and the condition of the property having greatly changed and deteriorated in the meantime, the lessee was not liable in an action of covenant for his refusal to accept the extension.

2. It is not the rule of law, as a general proposition, that in all contracts where the time within which an act is to be performed is not named in the contract, the time does not begin to run until the party for whose benefit the contract is to be performed has notified the other to perform it within a fixed time.

3. Where performance by one party depends on something to be previously done by the other, an action will not lie for non-performance, if default has been made in the precedent act; and where a tender of performance is necessary to fix a liability, and no time is fixed by the contract, the tender must be made in a reasonable time.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 106 January Term 1891, Sup. Ct.; court below, No. 194 September Term 1886, C. P. No. 4.

Statement of Facts.

On September 17, 1886, an action of covenant was brought by John T. Kille against the Reading Iron Works. The defendant pleaded non est factum, non infregit conventionem, covenants performed, covenants performed absque hoc.

On November 15, 1887, the cause was referred to *Mr. George Tucker Bispham* as referee, under the act of May 14, 1874, P. L. 166. On the hearing before the referee, the case presented was to the effect that on January 13, 1873, John T. Kille demised to Seyfert, McManus & Co., afterwards the Reading Iron Works, the defendant, the right to mine iron ore on certain real estate in Cumberland county. The defendant went into possession, but on September 26, 1874, was ejected upon a judgment in ejectment in favor of Caroline Ege and others: See Kille v. Ege, 79 Pa. 15; Ege v. Kille, 84 Pa. 333. Litigation thereafter arising between the plaintiff and the defendant in this case, for rent under the original lease on the one hand, and for damages from the eviction on the other, the parties on February 4, 1880, entered into an agreement whereby, each releasing to the other all claims under said causes of action, it was provided:

" 2. Should the said John T. Kille again obtain possession of the said tract of land, or so much thereof as includes the machinery constructed by the said Seyfert, McManus & Co. and as shall be sufficient for the purposes mentioned in the annexed lease, he shall again forthwith permit the said Reading Iron Works to enter into possession thereof under the present annexed lease, and shall forthwith tender unto them possession of the said recovered property; and shall forthwith, by covenant indorsed upon the said lease, extend to the said lessees the same, and all and every the covenants, conditions and terms thereof, for the term of fifteen years from the said tender of the said property. And the said Reading Iron Works shall and will, upon the said tender as aforesaid, and upon the execution of a covenant by the said John T. Kille as aforesaid, for the extension of the terms of the now existing lease for the period of fifteen years, by covenant to be indorsed upon the said lease and executed by the said Reading Iron Works, accept and agree to the same for the extended term of fifteen years: provided, the said John T. Kille can at that time convey to them a good, sufficient and marketable title to the said premises, and

the sole and exclusive right and privilege of mining and taking out iron ore therefrom. And thereupon the right and property in and to the said machinery and utensils placed upon the said tract of land as aforesaid to be in the said Reading Iron Works, as provided by the said original lease."

On October 11, 1884, the plaintiff purchased the rightful title to the property for the sum of $3,150, and tendered possession to the defendant, who refused to accept. Thereupon the plaintiff brought this suit.

On November 19, 1889, the referee filed his report, awarding to the plaintiff the sum of $26,835.61. The same day, the defendant filed exceptions, alleging that the referee erred inter alia:

1. In not finding that there was a failure of the quantity of ore in the mine.

2. In ruling that the taking away of ore by the Ege lessees prior to 1884, of 6300 tons, was irrelevant.

3. In ruling and finding that the changed condition of the ore bank and machinery failed to establish any legal defence and must be excluded from consideration.

4. In ruling and finding that by the contract of February 4, 1880, the plaintiff might acquire a title other than by a recovery from the Ege heirs.

5. In ruling and finding that a tender of possession after a lapse of four years and eight months was a reasonable time.

6. In his finding of the measure of damages, making no allowance for the value of the ore unmined.

7. In finding in favor of the plaintiff, and directing the entry of judgment thereon.

8. In not finding in favor of the defendant.

—Said exceptions being filed with the report of the referee, the defendant* took an appeal to the Supreme Court, to No. 225 January Term 1890. The appeal was quashed, however, on the ground that, under the provisions of the act of May 4, 1889, P. L. 80, it was prematurely taken: Kille v. Reading Iron Works, 134 Pa. 225.

---

* The Reporter has been informed that on the argument on April 9, 1890, it was the counsel for the appellant who raised the question as to the right to the appeal without a hearing before the court below on the exceptions filed, and that the appellee's counsel, desiring a speedy determination of the cause, argued in favor of the jurisdiction.

The record having been remitted, the exceptions to the referee's report were argued before the court below, and on November 1, 1890, the following opinion was filed, THAYER, P. J.:

On January 13, 1873, the plaintiff leased to the defendants, then known as Seyfert, McManus & Co., the sole and exclusive right and privilege of mining and taking out the iron ore from a certain tract of land in Cumberland county, for the term of fifteen years, for an annual rental of $2,000, for which the lessees were entitled to take out 4000 tons per annum without further charge, and they were to pay a royalty of fifty cents per ton on all ore mined in excess of that amount.

The lessees entered into possession and erected valuable machinery, costing, according to the testimony of Horatio Trexler, the defendants' superintendent, $7,700. But, before they commenced to get out the ore, viz., on September 26, 1874, the lessees were ejected from the property under a writ of habere facias possessionem, issued in a certain ejectment of Ege v. Kille, the grantor of the lessees. The trial resulted in a demonstration of the invalidity of Kille's title. The case went to the Supreme Court, where the Ege title was confirmed. It is reported in Kille v. Ege, 79 Pa. 15. The defendants were therefore evicted by a superior hostile title. The place was then abandoned for nearly five years, and the defendants brought suit against Kille to recover damages for their loss of possession and for the value of the machinery they had put in and which the sheriff had prevented their removing. In June, 1879, the Eges leased the property to other persons, who took possession of the premises, set the works in order, and mined and shipped ore from the property. Between June, 1879, and January 31, 1880, they had taken out 4800 tons. They took out, between the date of the agreement of February 4, 1880, and the time when Kille tendered the lease again to the defendants about 6300 tons of ore.

On February 4, 1880, after the defendants had been out of possession between five and six years, and while the suit brought by the defendants against the plaintiff to recover damages for the loss of their possession was still pending, an agreement was entered into between the plaintiff and the defendants by which it was provided that the parties should mutually release their

claims against each other; and it was further agreed that if the said Kille should again obtain possession of the ore tract, he should forthwith tender possession of the property to the defendants, and should, by covenant indorsed upon the original lease of 1873, extend the provisions of that lease for the term of fifteen years from the time of such tender; the defendants on their part agreeing to accept such tender and lease for the extended term of fifteen years.

Nothing appears to have been done by Kille under this agreement, in order to recover back the possession, for the space of nearly five years. But on October 11, 1884, he purchased the rightful title to the property from the grantees of those who had succeeded in the ejectment against him, for the consideration expressed in the deed of $3,150, and then proceeded to tender to the defendants the extension of the lease of 1873, claiming that they were bound to accept it under the agreement of February 4, 1880. This the defendants refused, alleging that the plaintiff was bound by the agreement to obtain the possession and title and to tender it to the defendants in a reasonable time; that this had not been done, that the condition of the property had greatly changed and deteriorated in the meantime, and that they were not now bound to accept it.

This is the main issue in the case. The referee decided it against the defendants, and, proceeding to assess the damages against them for their alleged breach of contract, charged them with the annual rent of $2,000 per annum for fifteen years, viz., from October 1, 1884, to October 1, 1899, which, with the interest added and after deducting a discount upon the payments which have not matured, results in an award against the defendants of $26,831.61. This is, of course, specific performance; with this aggravation, however, that whereas, if their contract were literally performed they would have until October 1, 1899, to complete their payments, they are now by the referee's report obliged to anticipate, and pay ten years' rent before it is due. If this award is to stand, the plaintiff will get therefrom for his investment of $3,150, which he saw fit to make in the purchase of the Ege title in order to patch up his own defective title, the sum of $26,835.61; while the defendants, who have not taken a pound of ore from the plaintiff's land, will be out of pocket, in money invested in machinery

$7,700, and in cash recovered by the plaintiff $26,835.61 besides, amounting altogether to $34,535.61.

We have been unable to agree with the learned referee, either in these results, or in the argumentative methods by which they have been reached.

That the plaintiff was bound under the agreement of February 4, 1880, in order to compel the defendants to accept a renewal of the old lease, which had become abortive through the defect of title in the plaintiff, to tender to the defendants the possession of the ore beds, accompanied by " a good, sufficient and marketable title," within a reasonable time after the making of the agreement, does not, we think, admit of doubt. It is laid down by many text writers and decided in many cases, that wherever any act is covenanted or agreed to be done by one party in consideration of an obligation to be assumed by another party, the party who is to do the act must first tender performance, before he can call upon the other party to comply with his obligation or hold him to any responsibility for refusing. He is not discharged from this duty by the neglect of the other party to call upon him for performance. He is the actor in the business ; and it is incumbent upon him to tender performance before he can hold the other party for an alleged breach of the contract on his part. It is equally well settled that where the time of performance is not specified in the contract, it must be done within a reasonable time, and if performance is not tendered within a reasonable time the other party is discharged and cannot be held. " Wherever," says Mr. Addison, " the performance of one party depends on something to be previously done by the other, an action will not lie for non-performance, if default has been made in the accomplishment of the precedent act ; for, if you desire to enforce a contract, you must first put yourself right by performing your part of the contract, or by being ready and offering to perform it : " Addison on Cont., 879, 1122, 1128, and the cases cited. The application of this rule in cases of contracts relating to personal property is too familiar to require any citations by way of illustration. It applies with equal force to contracts relating to realty. Thus, in agreements for the sale of real property, where one party agrees to convey and the other to pay the price, the vendee must first tender a deed before he

can call upon the other party for performance : Notes to Cutter v. Powell, 2 Sm. L. C. 24 ; Espy v. Anderson, 64 Pa. 308. Of course, the same rule prevails in a contract to make a lease, for a lease is nothing but the sale of a term. All the authorities agree that where a tender of performance is necessary in order to fix a liability upon the other party, the tender, if no time is fixed by the agreement, must be made in a reasonable time.

But these well settled principles of law, it is alleged by the plaintiff's counsel, and also by the learned referee in his opinion, have been overturned, or at least so modified that the defendants in the present case can derive no protection from them ; and to establish this, three English cases are relied on : Graham v. Land Co., 11 Exch. 101 ; Nott v. Riccard, 22 Beav. 307 ; McBryde v. Weeks, 22 Beav. 533. I am not a little surprised that these cases should have received such an interpretation at the hands of the learned counsel. I shall endeavor to demonstrate that no such inference can be properly drawn from either of them, and that the whole misapprehension upon the subject has grown out of a remark made by MAULE, J., in the first case referred to, a remark entirely applicable to the case then in hand, but which cannot by any possibility be enunciated as a general rule of law upon this subject, applicable to cases like that now before the court.

The case of Graham v. Land Co. was this : In 1847, R, being the owner of 157 shares, worth £100 each, became bankrupt. Twenty-five pounds had been paid on the shares. In June, 1849, notice was given to the bankrupt's assignee of a call of £1 per share. Nothing further was done by either party until February, 1853, when the assignee claimed to be registered in the company's books as owner of the shares, he offering to pay what was due for calls. The company refused. The plaintiff sued them and the judge at nisi prius entered a nonsuit. On error, the Court of Exchequer reversed the ruling and took off the nonsuit. It was argued for the defendants that no title vested in the assignee until he did some act signifying his acceptance of the shares, and that it was incumbent upon him to do that in a reasonable time. On the other side, it was argued that it was unnecessary for the assignee to give notice of his acceptance of the shares, and this was said to have been expressly decided in Gibson v. Car-

Opinion of Court below.

ruthers, 8 M. & W. 329 ; that, as the shares had undoubtedly belonged to the bankrupt, his title became vested in the assignee, unless it could be proved that he had refused to accept them ; that, while the directors might have forfeited the shares for non-payment of the calls by giving thirty days' notice, they not having done so, and not having taken any action upon the subject, the right of the assignee had not been lost by his neglect to notify the directors of his acceptance. In reversing the nonsuit, and sending the case back for re-trial, MAULE, J., said : " It seems to us that it would be proper to tell the jury that there is no limit of time until some one makes an application. We think that in cases of this kind a reasonable time will not begin to run until some one interested in the matter takes some step in respect of it."

This is the whole case. From it the learned counsel and the learned referee have deduced this general proposition of law, viz., that in all contracts where the time within which an act is to be performed is not named in the contract, time does not begin to run until the party for whose benefit the contract is to be performed has notified the other to perform it within a fixed time. It is hardly necessary for me to say, after stating the case as fully as I have done, that no such general rule of law was laid down by the Court of Exchequer in Graham v. Land Co. All that was decided in that case was, that, in such a case as there arose, neither party could be put in default without some prior action or notice from the other party. The case was not founded upon any contract whatever between the parties to the suit. What was ruled was that the plaintiff could not be deprived of his right to the stock, without some notice from the company. It will be readily seen that there is no resemblance whatever between the facts of that case and the case now before us. Yet upon Graham v. Land Co. the argument of the plaintiff's counsel and the chief weight of the learned referee's decision is made to depend in the present case. The case is not a binding authority in this state, but, if it were, the answer to it would be that the rule there laid down has no application to such a state of facts as that which exists in the case now before us. The mistake consists in erecting into a rule of law a judicial statement which has no general application whatever, and no force at all except in its connection with

the particular circumstances of the case in which it was made.

In Nott v. Riccard, 22 Beav. 307, the point ruled was that where there is undue delay on the part of a vendor in making out his title, the purchaser may, on reasonable notice, put an end to the contract. By the contract the purchase was to be completed on the twenty-second of June. On May 30th, the vendor offered an insufficient title and refused to furnish any other. On the twenty-third of July, the purchaser gave notice that unless the title should be completed within a fortnight he would rescind the contract. The vendor made default and the vendee rescinded on August 10th. Held, that he was justified in putting an end to the contract, and consequently specific performance was refused. What was decided was, that where one who has made a contract to do a thing, for a consideration to be paid therefor, does not proceed to do it with reasonable promptitude, the other party may call upon him to fulfil the contract by a certain day, and may rescind the agreement if he does not do so. But this by no means establishes the rule that a man who is bound to perform within a reasonable time can neglect for many years to take any step in the business whatever, and then hold the other party to the contract. Such long and unreasonable delays have always been held to be equivalent to an abandonment of the contract. "Unless," as Mr. Chitty says, "there be an express stipulation in the contract that a request or demand of performance shall be made, or it be requisite from the peculiar nature of the bargain, none is essential. The party is bound to perform his contract without being required so to do:" Chitty on Cont., 733.

The point in McBryde v. Weeks, 22 Beav. 533, the third case relied on by the plaintiff, was essentially the same as that decided in Nott v. Riccard. A agreed on October 4th to grant a mining lease to B. On December 10th, B gave notice to A that unless he completed the contract within a month he would rescind the contract. Held, that on A's default, B had the right to rescind. This case therefore is, of course, no authority for saying that if A has contracted with B to do something within a reasonable time, for which he is to be paid by B, that A can wait five years without doing anything whatever, and then by offering to perform hold B to the contract. On the contrary, the rule is well settled on this subject, viz.,

that where there is such great delay of performance, the other party is entirely justified in presuming an abandonment of the contract, and that no request for performance is necessary by him to put the other party in the wrong, for he is already in the wrong by his neglect to perform, or to offer to perform, within a reasonable time. " It is now fully established," said GIBSON, J., in Bellas v. Hays, 5 S. & R. 443, " that considerable delay, without sufficient reason to account for it, will be considered satisfactory evidence of abandonment." The case of McBryde v. Weeks, however, has, in another aspect of it, an important bearing upon the case now before us, for it was there decided that, in contracts for the lease of working mines, time, though not named in the agreement, is, from the fluctuating nature of the property, considered as of the essence of the contract; a ruling which is in consonance with our own cases on the same subject, and has a strong bearing on the present case.

What Kille agreed to do by the agreement of February 4, 1880, was to obtain possession, if he could, of the mining property from which his lessees, the defendants, had been ejected six years before, and to tender it to the defendants with " good, sufficient and marketable title to the premises." And this he was bound to do within a reasonable time. He did not do it within a reasonable time, but waited nearly five years before doing anything in the matter. He then bought the real title for a small sum, and tendered it to the defendants. In our opinion they were fully justified in refusing it after such a lapse of time. Other people, strangers to the defendants, continued to work the mine long after the date of the agreement of February 4, 1880. They carried away more than six thousand tons of ore before they abandoned the works. In the meantime, the machinery which the defendants had put in at a great expense had become dilapidated and fallen into a ruinous condition. According to the testimony of the superintendent, Mr. Trexler, " the whole thing was a wreck " in the fall of 1884, when the plaintiff tendered the new lease to the defendants. For four years and eight months after the agreement, he had done nothing, and taken no steps whatever, so far as the evidence shows, to regain the possession.

The agreement of February 4, 1880, seems to have contem-

Opinion of Court below.

plated the possibility of his regaining the possession by another ejectment, for it recites that the eviction by the Eges was illegal. Yet no fresh action of ejectment seems to have been commenced or contemplated by him, nor were any steps taken to purchase the Ege title for four years and eight months after the agreement. We think that this was an altogether unreasonable delay; that he had no right to remain inactive for this long period of time, and then, when the ore bank 'could no longer be worked as an open bank, when the machinery was dilapidated and ruined, and when the ore itself had, owing to other causes, become of little or no value in the market, to come and tender a comparatively worthless property to the defendants. They had a right to refuse it under such circumstances, for the plaintiff's offer of performance was then stale and out of time. His long and inexcusable delay exonerated the defendants from any obligation to accept the offer at that late day.

It is said by the learned referee that if the plaintiff had sought to recover the possession by another ejectment, a long time might have been consumed in reaching the end of it. Possibly it might, but it is in the highest degree improbable that it would have required nearly five years to accomplish that result. Ege v. Kille was tried in the court below in October, 1874, and was decided by the Supreme Court in May, 1875. But, in point of fact, no action of ejectment was ever brought by the plaintiff, and there is no evidence that he ever entertained any idea of resorting to an action. Doubtless, he felt that to do so would be to throw good money after bad; for the title of his adversaries had stood, not only the test of a court and jury in Cumberland county, but of the Supreme Court also. He probably never had any idea of contesting the matter further in the courts. In point of fact he did nothing. He seems to have abandoned the matter. He lost the case in the Common Pleas of Cumberland county in 1874. He lost it in the Supreme Court in the spring of 1875. There is no evidence that he did anything to recover the property from that time until his purchase of the title on October 11, 1884, a period of nearly ten years. He suffered nearly five years to elapse after his agreement with the defendants, before he made up his mind to buy the Ege title. He then bought it for a sum which shows how greatly the property had deteriorated in value, and then came and offered it to

the defendants. They were justified in refusing it, and that ought to have ended the plaintiff's claim against them.

Being clearly of the opinion that the plaintiff's claim as presented to the referee is entirely destitute of merit, and that it ought to be rejected as having no foundation in law or equity, it seems to be unnecessary to prolong this opinion by entering into a discussion of the question of what is the proper measure of damages in such a case. We cannot, however, agree with the learned referee that the proper measure of damages is the orerent reserved for fifteen years, without making any allowance to the defendants for the 60,000 tons of ore which the defendants would be entitled to take out during the lease, but the whole of which remains in the plaintiff's land and not one pound of which has been carried away by the defendants. It is not necessary to pursue this branch of the subject any further, but I may be allowed to remark that in our opinion the conclusions reached upon this subject by the learned referee are not supported by Powell v. Burroughs, 54 Pa. 329, or Wolf Creek Coal Co. v. Schultz, 71 Pa. 180, both of which cases were upon agreements for stipulated damages, and were, in that respect, altogether unlike the present case, in which the contract contains no language which by any ingenuity can be tortured into an agreement for liquidated damages. On the other hand, the measure of damages adopted by the referee seems to be inconsistent with the ruling of the Supreme Court in Lyon v. Miller, 24 Pa. 392, where the measure of damages was held to be the difference between the stipulated rate of compensation and the value of the ore left unmined. The decision of the Supreme Court in Cherry v. Miller, 1 Pittsb. L. J. 98, is substantially to the same effect.

Sausser v. Steinmetz, 88 Pa. 324, and McCafferty v. Griswold, 99 Pa. 270, were decided upon questions depending upon the statute of frauds and perjuries, and have little bearing upon the present question. If the 60,000 tons of ore which the defendants were entitled to take, but all of which remain in the plaintiff's land, have become of no value by reason of the changes which have occurred in the business during the years in which the plaintiff did nothing to perfect his title, why should the defendants be obliged to accept a lease after so great a lapse of time fraught with such a destruction of values, or, to pay for

refusing it the sum of $26,835.61 ?    Koch's App., 93 Pa. 434, is an authority that specific performance will not be decreed of such a contract as is set up in this case.    Yet the award of the referee is no less than a decree for specific performance.    It is even more, for, as I have already observed, it compels the defendants to pay ten years rent in advance before any of it has accrued.    It is vain to attempt to justify this method of assessing damages for the breach of an agreement to accept an ore lease, by a reference to the principle that where a man repudiates an executory contract and avows his intention not to perform it, the other party to the contract may sue immediately and recover damages for the breach.

Exceptions sustained; and it is ordered that the referee's report and award be reversed, and judgment entered for the defendants.

—Judgment having been entered for the defendant, the plaintiff took this appeal, specifying that the court erred :

1, 2.  In entering judgment for the defendant, and in not entering judgment for the plaintiff for $26,835.61, as found by the referee.

3.  In not entering judgment for the plaintiff in the sum to which he was entitled as damages, for the refusal by the defendant to accept the tender made by the plaintiff October 11, 1884.

*Mr. A. Sydney Biddle* (with him *Messrs. Biddle & Ward*, and *Mr. J. Rodman Paul*), for the appellant.

Counsel cited: Chitty on Cont.. 11th Am. ed., 434; 2 Add. on Cont., ed. 1888, 892; Wells v. Maxwell, 32 Beav. 408; King v. Wilson, 6 Beav. 124; Taylor v. Brown, 2 Beav. 181; Webb v. Hughes, L. R. 10 Eq. C. 281; Parkin v. Thorold, 16 Beav. 59; Green v. Sevin, L. R. 13 Ch. D. 589; Pegg v. Wisden, 16 Beav. 239; Sugden on V. & P., 13th ed., 227; Tiernan v. Roland, 15 Pa. 429, 439; Forsyth v. Oil Co., 53 Pa. 168; Hatton v. Johnson, 83 Pa. 219; Graham v. Land Co., 11 Exch. 101; McBryde v. Weeks, 22 Beav. 533.

*Mr. George F. Baer* and *Mr. Thomas R. Elcock*, for the appellee.

Counsel cited: Chitty on Cont., 1068, 1073; Lovelock v.

Franklin, 8 Q. B. 371; Short v. Stone, 8 Q. B. 358; Caines v. Smith, 15 M. & W. 189; Story's Eq. J., 770; Holt v Rogers, 8 Pet. 420; Dorsey v. Packwood, 12 How. 126; Harkness v. Underhill, 1 Black 316; McNeill v. Magee, 5 Mas. 244; Bronson v. Cahill, 5 McLean 19; Callen v. Ferguson, 29 Pa. 251; Tiernan v. Roland, 15 Pa. 438; Hatton v. Johnson, 83 Pa. 219; Alexander's App., 118 Pa. 610; Pratt v. Law, 9 Cranch 456; Brazhier v. Gratz. 6 Wheat. 528; Bank v. Lynn, 1 Pet. 383; Paine v. Meller, 6 Ves. 349; Taylor v. Longworth, 14 Pet. 172; Cooper v. Brown, 2 McLean 495.

PER CURIAM:

This judgment is affirmed upon the opinion of the learned judge of the court below.

Judgment affirmed.