## MARTIN v. BERWIND-WHITE COAL MIN. CO.

(Circuit Court, D. Pennsylvania. March 21, 1902.)

DAMAGES—BREACH OF CONTRACT—STIPULATED DAMAGES IN COAL LEASE.

A coal lease provided that the lessee should mine not less than a stated number of tons per year during the term, and should pay royalty on such number of tons, whether mined or not. *Held*, that such provision was one for liquidated damages in case of nonperformance by the lessee in whole or in part, and not for a penalty, and that, where he abandoned the lease before the end of the term without good cause, he was liable for damages in the sum so stipulated, without regard to the value to the lessor of the coal remaining in place.

At Law. Trial to the court.

R. M. Schick and Austin O. Furst, for plaintiff.
David L. Krebs, for defendant.

J. B. McPHERSON, District Judge. By agreement of the parties, this suit was tried before the court without a jury, and it now becomes my duty to state the conclusions of fact to which I have

been brought by a consideration of the evidence. The action is brought to recover damages for the breach of a mining contract, by which the plaintiff leased to the defendant a seam of coal under a tract of land in the county of Cambria, state of Pennsylvania, with the right to mine, transport, and sell, and the defendant agreed to mine and ship not less than 75,000 tons annually after the first year, and to pay a royalty of 10 cents for each ton of this quantity, whether mined or not, and for each ton mined and shipped in excess of such quantity. The contract was to run for 10 years from January 5, 1891, and this period had expired when the suit was begun. The defendant began to mine the coal, but in a few months reached a part of the seam in which the coal was so inferior in quality as to be unmarketable. The opening was driven into this material for some distance, and the defendant then ceased to mine. Thereupon the plaintiff, with the defendant's consent, drove the mine still further, in order to determine whether the trouble was merely local, and, after some months of work, passed through this inferior section of the seam, and came to marketable coal. Nevertheless the defendant refused to go on with the operation, and did nothing more during the term of the lease. The plaintiff's claim is for the sum of $7,500 a year, being the royalty of 10 cents upon the minimum quantity that the defendant had agreed to take out during the last nine years of the lease.

Two defenses are set up, each raising a question of fact. The first is that the seam contained nothing that could be properly called coal,—nothing but an unmerchantable compound of slate, sulphur, clay, and coal,—and therefore that the consideration for the lease had wholly failed. To this the plaintiff replied, that, while it is true that unmerchantable coal rendered the seam valueless for a short distance, he had opened the mine beyond that section, and had come upon good coal, fit for the market, which the defendant nevertheless refused to take out. The second defense is that possession of the leased premises was surrendered by the defendant and accepted by the plaintiff, and that the contract was thus brought to an end. The plaintiff declared this defense to be unfounded, and both parties have offered evidence in support of their respective contentions. I have examined with care the evidence concerning both defenses, and am clearly of opinion that the weight of the evidence is with the plaintiff upon both. I shall not discuss the testimony, nor find the facts specially, believing such a course to be unnecessary, but I shall confine myself to the general finding that upon the whole case the plaintiff is entitled to a verdict.

The remaining question is, what is the measure of damages? Upon this point I regard the following clauses in the lease as controlling:

"And the said lessee covenants and agrees to mine and ship from the premises aforesaid not less than 75,000 gross tons of coal per year (after the first year of this lease), and to pay royalty on 75,000 gross tons per year, whether mined or not, and as much more as is practicable, unless prevented by strikes, riots, or any other unforeseen calamity, or by fire or water, or by troubles or faults in the coal seams. And the said lessee agrees to pay to the said lessor a royalty of ten cents per gross ton on all said coal

mined and shipped. Settlements to be made for said royalty on or before the 20th day of each and every month during the continuance of this lease for each and every ton of coal, of 2,240 lbs., mined and taken away from the said premises during the preceding month.

"And it is further understood and agreed between the parties hereto that all royalties which may be paid upon any coal not mined or taken away from said premises during any current year shall be credited upon any coal mined and taken away in excess of the minimum herein provided for in any future or past years."

The defendant contends that the sum thus provided for is not liquidated damages, but a mere penalty, and that, if the plaintiff is entitled to recover at all, he must make an allowance for the present value of the coal that is still in place, and therefore remains at the plaintiff's command. If this position is sound, it follows that, as the royalty now paid in that region is as large as the royalty reserved by the lease, the defendant's breach of contract has entailed a very limited liability. The case of Lyon v. Miller, 24 Pa. 392, is cited in support of this contention. The facts there, however, were very different from the facts now before the court. No minimum quantity was provided for, but the lessee simply undertook to mine coal from the lessor's land, and to pay a certain sum for every bushel mined during the year. Upon the breach of that contract it was held (and, no doubt, properly held) that, in computing the amount of damage that the lessor had suffered, the value of the coal still in his land must be taken into account, and that the measure of damage was the difference between the stipulated rate of compensation and the value of the coal in the mine. This case is referred to with approval in a dictum of Judge Thayer, of the common pleas of Philadelphia county, who tried the comparatively recent case of Kille v. Iron Works, 141 Pa. 451, 21 Atl. 666; but it is distinctly stated by the learned trial judge that the contract then before him contained "no language which by any ingenuity can be tortured into an agreement for liquidated damages." In the case now being considered, however, the parties have stipulated upon the minimum sum to be paid each year for the right to mine; and this sum is, in my opinion, so clearly and distinctly liquidated damages, and not a penalty, that I shall not take time to discuss it. It is, I think, an annual rent, distinctly agreed upon, and must be paid, if, as I have found, the coal is merchantable, although no coal is actually mined. I am unable to distinguish the case from Powell v. Burroughs, 54 Pa. 329, in which the supreme court of Pennsylvania, while considering a similar agreement, used the following language:

"The tenth and eleventh assignments may be considered together. The one is an amplification of the other, or, rather, the latter is an explanation of the former, and is 'that, if the jury believe that the coal in the mine was worth a greater rent at the termination of the defendant's lease than the defendant stipulated to pay, then there can be no recovery beyond nominal damages.'

"Had this instruction been granted, it would have directly sustained the defendant's tenth plea. We are therefore to determine whether it was error to refuse it or not.

"It can hardly be said that this plea was a ground of defense at law for a breach of the covenants sued on. It does not aver performance in any

shape, nor does it show that it was contrary to law that it should be performed. If it be a plea at all, it is an equitable plea or defense. It says to the plaintiff: 'True it is, I entered into the covenants for the breach of which I am sued, and did commit the breaches charged, but it was better for you that I did. You now get more for your coal than I agreed to give you. You are therefore entitled to nominal damages only.' Such equity, it is apparent, rests not on any merit in the party claiming it, but arises exclusively in his bad faith in not regarding his covenants. There is no such principle in equity as this. If sanctioned, it would be a panacea to heal every broken covenant where performance was stipulated for. The defendant had three alternatives, either of two of which would have relieved him from all damages, namely, the performance of his covenants as they were written, or· showing that they were dispensed with by some inability· to perform provided against in the lease; the third, to terminate the lease at the end of any year, on giving the notice required, and this would have released him from liability for any breach but for the past year. He chose to do neither, and now claims to show that he has done better for the plaintiffs by keeping their coal in place for a higher price. This policy, if taken in time and extended, might have covered the entire coal region, and but a single mine might have been worked. Competition thus set at defiance would undoubtedly be profitable to such a lessee, if, when called on to answer in damages to other lessors for broken covenants, he might successfully defend himself by showing that there were parties who had given or were willing to give higher prices for the unmined coal than he had contracted to give. If he could do this, he might be fairly entitled to stand acquitted of damages, and to have the credit of a discovery.

"The defendant covenanted to take out of the Burroughs mine, leased in 1862, without any reference to any other mine or lease, so many tons per year, while the term lasted, and, on failure to take them out, to pay for the stipulated number taken or not taken. The number of tons to be taken or paid for was the moving consideration for the lease, and must be so regarded. It was therefore a clear case of stipulated damages in case of nonperformance, or nonperformance pro tanto. The parties fixed it as the true measure of damages in case of failure, 'without reference to the extent of the injury that might ensue by nonperformance,' and, so far as the covenant is concerned, are bound by it. The uncertainty as to the extent of the injury which may ensue is a criterion by which to determine whether it is a case of liquidated damages or a penalty. Chit. Cont. 763, 766."

See, also, Coal Co. v. Schultz, 71 Pa. 180.

The statute of limitations was not set up as a partial defense, and I express no opinion, therefore, concerning its applicability: Heath v. Page, 48 Pa. 130; Peck v. Whitaker, 103 Pa. 297. It follows that the plaintiff is entitled to recover the annual sum of $7,500 for each of the last nine years of the lease, with interest from the end of the respective years to December 11, 1901, the day when the trial was concluded,—a total of $87,525,—less a credit of $938.66 which the plaintiff concedes to be due from him to the defendant.

I therefore find in favor of the plaintiff for the sum of $86,586.34.