### BERWIND-WHITE COAL MIN. CO. v. MARTIN.

(Circuit Court of Appeals, Third Circuit. July 20, 1903.)

No. 6.

**1. TRIAL BY COURT—GENERAL FINDINGS—REVIEW OF EVIDENCE.**

Where a case is tried by the court without a jury, and the court, notwithstanding defendant's application for special findings of fact, found generally that the plaintiff was entitled to recover, the facts cannot be reviewed on appeal.

**2. MINES AND MINING—COAL LEASE—ROYALTIES—DAMAGES.**

Where defendant executed a coal lease by which it covenanted to pay a royalty of 10 cents a ton on all coal mined and shipped, and, except under certain conditions, to mine after the first year not less than 75,000 tons per annum, and as much more as practicable, paying royalties on the quantity named, whether mined or not, the royalty paid on coal not mined in any year to be credited on the excess, if any, above the minimum mined subsequently, and after the first year defendant abandoned the mine, plaintiff, on the expiration of the time covered by the lease, was entitled to recover for the whole period the minimum royalty specified and interest.

Acheson, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 114 Fed. 553.

Frank P. Prichard, for plaintiff in error.

Austin O. Furst and Rudolph M. Shick, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and ARCHBALD, District Judge.

ARCHBALD, District Judge. This case was tried by the court without the intervention of a jury. Rev. St. U. S. §§ 649, 700 [U. S. Comp. St. pp. 525, 570]. The defendant presented a number of re-

quests for special findings of fact and conclusions of law, but the court, without passing upon them, found generally that the plaintiff was entitled to recover. There can be no question as to the entire propriety of this course. The statute expressly provides that the finding of the court on the facts may be general or special, and you can no more compel the latter than you can require a special verdict from a jury. It is true that in Norris v. Jackson, 9 Wall. 125, 19 L. Ed. 608, it is said that, "if the parties desire a review of the law involved in the case, they must * * * get the court to find a special verdict which raises the legal questions"; but it is not to be understood from this that it can be exacted, all that is meant being that the court should be persuaded to do so. Neither is the alternative, which is there suggested, of presenting propositions of law, and requiring the court to rule upon them, of any greater obligation. The right to this has been asserted without success in a number of cases, and the practice must now be considered as settled to the contrary. Insurance Company v. Folsom, 18 Wall. 237, 21 L. Ed. 827; Cooper v. Omohundro, 19 Wall. 65, 22 L. Ed. 47; St. Louis v. Western Union Telegraph Company, 166 U. S. 388, 17 Sup. Ct. 608, 41 L. Ed. 1044; City of Key West v. Baer, 66 Fed. 440, 13 C. C. A. 572; Consolidated Coal Company v. Ice Company, 106 Fed. 798, 45 C. C. A. 638. The facts of the case are not, therefore, before us, and the only question open on the record is the one of damages.

According to the declaration, the plaintiff sues for certain unpaid coal royalties claimed to be due on an agreement of mine lease entered into with the defendant in January, 1891. A copy of the lease is attached, and shows that it was for the term of 10 years, with the option of renewing for a like term, and gave the defendant company the right to mine and dispose of all the coal in a certain vein underlying a tract of land in Cambria county, Pa., the defendant covenanting on its part to pay a royalty of 10 cents a ton on all coal mined and shipped, and, except under certain conditions, to mine after the first year not less than 75,000 tons per annum, and as much more as practicable, paying royalty on the quantity named, whether mined or not; the royalty paid on coal not mined in any year to be credited on the excess, if any, above the minimum mined subsequently. It was further averred that the defendant took possession under the lease, opened a mine in the vein, and began the mining and shipping of coal therefrom during the first year; but that during the next and subsequent years it neither mined nor paid for the minimum, nor any part of it. The plaintiff thereupon claimed the yearly royalty of $7,500 for nine years covering the period from January, 1892, to January, 1901, inclusive, amounting to $67,500, a credit of $100 a year for seven years being allowed as the rent of a house and stable erected on the land. The trial judge sustained this claim in full, including interest, and gave judgment for the plaintiff for $86,586.34. It is contended by the defendant that this was not warranted; that the action being for the breach of an executory contract, and the plaintiff having his coal still in place untouched, is not entitled to the royalty upon it as though it had been mined, but that a deduction must be made on account of it, and interest simply allowed on the annual installments

which he would have received if mining had been carried on, amounting to some $17,000. The action is assumpsit, which, according to the state practice, covers also debt and covenant. It was treated by the court below as in the nature of the latter, and the stipulated annual installments of royalty as liquidated damages. It might equally stand as an action of debt, the obligation to pay being absolute, and the term ended; but, whichever way it be taken, the result is the same, the defendant being bound to pay in accordance with the agreement.

The absolute character of the obligation in such cases is well shown by the authorities. In Bamford v. Lehigh Zinc Company (C. C.) 33 Fed. 677, affirmed in 150 U. S. 665, 14 Sup. Ct. 219, 37 L. Ed. 1215, the defendant took a lease for 10 years of an abandoned zinc mine and concentration works on a specified royalty per ton, agreeing to pay in any event an annual minimum of $1,000. On taking possession and pumping out the water, it was found that the mine was practically destitute of ore, and payment was refused in consequence. On suit being brought for three years' rent, the defendant set up a failure of consideration, but judgment was given against it. "The motive for the contract," says Shipman, J., "was the hope of benefit which might arise to the defendant from the venture. The consideration for the undertaking to pay at least the sum of one thousand dollars annually was the use of a mine property and works of large cost and of doubtful value, but which might become of profit, and it received what it contracted for." In Johnston v. Cowan, 59 Pa. 275, the plaintiff granted to the defendants the right to mine fire clay, for which they were to pay him 12 cents a ton, and mine 1,250 tons annually, $150 to be paid every six months, whether mining to that extent had been done or not. To a suit for four semiannual installments the defendants set up that they had never entered under the lease; but it was held that the right to mine was a privilege for which they were bound to pay whether they had availed themselves of it or not. "It is highly improper," says Thompson, C. J., "to call the fixed sums to be paid, in the event of the minimum of coal not being taken, liquidated damages. It is the alternative price to be paid in an event which it was foreseen might happen; not as damages, but in payment for the privilege." In Kemble Coal & Iron Company v. Scott, 90 Pa. 332, the defendants took an ore lease, and bound themselves to pay $10,000 every three years after the first, whether ore to that extent was mined or not. Disappointed in their expectations in regard to the land, and after spending considerable money to reach the ore upon it, they ceased operations, and endeavored to give up the lease; but it was held that they were responsible for payment of the stipulated minimum. In Timlin v. Brown, 158 Pa. 606, 28 Atl. 236, there was a lease of coal for 10 years on a royalty of half a cent a bushel, 10,000 bushels to be mined or paid for annually. After seven years the coal seam got so thin that the lessees stopped mining, and, the lessors having brought suit at the end of the term for the three years unpaid, it was held that they were entitled to recover regardless of the question of the exhaustion of the property. This decision is somewhat qualified in Boyer v. Fulmer, 176 Pa. 282, 35 Atl. 235, but it is the doctrine of the English cases (Marquis of Bute v. Thompson, 13 Mees. & Wellsby, 487; Jervis v. Thompkinson, 1 Hurls. & Norm. 195; Phillips v.

Jones, 9 Simons, 519; Jeffreys v. Fairs, L. R. 4 Chan. Div. 448; Clifford v. Watts, L. R. 5 C. P. 577), and has the weight of authority elsewhere (Wharton v. Stoutenburgh, 46 N. J. Law, 151; Gilmore v. Ontario Iron Company, 86 N. Y. 455; Tod v. Stambaugh, 37 Ohio St. 469; McDowell v. Hendrix, 67 Ind. 513; Central Appalachian Company v. Buchanan, 73 Fed. 1006, 20 C. C. A. 33). It is also forcibly reasserted in the subsequent case of Lehigh & Wilkes-Barre Coal Company v. Wright, 177 Pa. 387, 35 Atl. 919, a bill to restrain the forfeiture of a coal lease, threatened on account of the nonpayment of royalties. By the terms of the lease an annual minimum of $4,000 was to be paid whether a corresponding quantity of coal, at the rate per ton agreed upon, was mined or not. The lessees paid this for a number of years in advance of their mining, until, as it was shown, they had paid for more coal than was left in the land, on account of which they claimed the right to stop; but it was held that they must continue to pay, regardless of this, if they proposed to retain possession. As this was a bill in which equitable considerations, if any, are entitled to prevail, it is especially significant that the lessees were not permitted to escape from the strict terms of their bargain.

If, then, according to these cases, the defendant company was bound (as it undoubtedly was) to pay for the stipulated minimum quantity, year by year, as it accrued during the life of the lease (subject only to the contingencies with regard to faults and strikes there provided for), it is difficult to see why it is not answerable to the same extent now that the term is closed. Had suit been brought at the end of each year, there can be no question that the plaintiff would have been entitled to recover the $7,500 which the company agreed to pay, and, repeating this year by year, he would have obtained in the aggregate every dollar that he now claims. How, then, can he be put off with less simply because he has waited and consolidated his demand so as to cover the whole period?

The suggestion that the plaintiff still has his coal is well disposed of in the case of Gilmore v. Ontario Iron Company, 86 N. Y. 455, which was a suit, the same as here, for unmined royalty. "It would be no answer to a demand for rent of agricultural land," says Folger, C. J., "that the tenant had let the land lie idle, and that all the elements of productiveness still lay in the soil unused; that those were what the tenant had bargained for, and they were yet there for the landlord. They are of value to the landlord only when used. He uses them, in effect, from year to year, through the tenant, and gets his profit from the use in the rent he receives. So here the ore gives no return until dug out and marketed. The plaintiff's method of doing this was to let the privilege of mining to the defendant, and reserving a portion of the profit in the royalty stipulated for. It may have been—it probably was—the most profitable method for him to adopt to make gain from his ore. Though the ore may remain, and not be lost to him, time has been lost to him in the process of having it turned into money. He has lost the enjoyment of the fruits of his property. * * * He has failed to realize the profitable results he looked for, and had a right to look for, from the bargain he made." The same point was raised and discussed in Powell v. Burroughs, 54 Pa. 329, where the defense set up was that the unmined coal was

worth more per ton at that time than what the defendant had agreed to pay for it; but he was nevertheless held liable. "It can hardly be said," says Thompson, J., "that this plea was a ground of defense at law for a breach of the covenant sued on. It does not aver performance in any shape, nor does it show that it was contrary to law that it should be performed. If it be a plea at all, it is an equitable plea or defense. * * * If sanctioned, it would be a panacea to heal every broken covenant where performance was stipulated for."

These observations apply whether, as stated above, the case be regarded as counting in debt, or in covenant as treated in the court below. The only difference is that in the latter the minimum royalties agreed to be paid are to be taken as liquidated damages; and, notwithstanding what is said in Johnston v. Cowan, supra, there is abundant authority to sustain this view. Powell v. Burroughs, 54 Pa. 329; Wolf Creek Coal Company v. Schultz, 71 Pa. 180; Consolidated Coal Company v. Peers, 166 Ill. 361, 46 N. E. 1105, 38 L. R. A. 624; Coal Creek Mining Company v. Tennessee Coal Company, 106 Tennessee, 651, 62 S. W. 162. The defendant relies on Lyon v. Miller, 24 Pa. 392, and Kille v. Iron Works, 141 Pa. 440, 21 Atl. 666; but in neither of these was there any provision for the payment of a definite annual quantity whether mined or not, a most material distinction. Ridgely v. Conewago Iron Company (C. C.) 53 Fed. 988. In Kille v. Iron Works, moreover, judgment was given for the defendant on the merits, the court holding that the plaintiff was not entitled to recover, and the expression of opinion by Thayer, P. J., on the question of damages was, therefore, entirely obiter.

Our conclusion, therefore, is that the plaintiff is entitled to all that has been awarded him. It certainly would be most disturbing to the obligation of mine leases if we should hold, as we are urged to do, that the defendant company, after covenanting to pay a definite minimum royalty so unqualifiedly as it did, can only be required to settle for the difference after allowing for and deducting the uncertain value of the coal in place which it undertook to mine, and might have, but did not. Nor is this helped out by conceding interest on deferred payments, which, at the same time, in effect, it claims were not really due. If the fact that the plaintiff still has his coal suggests an equity—of which we are by no means convinced—it is sufficient to say that, this being an action at law, it cannot be worked out here. Finding, therefore, no error in the record, the judgment is affirmed.

ACHESON, Circuit Judge (dissenting). I am not able to concur in the affirmance of the judgment of the court below. The result reached, it seems to me, is unjust, and not warranted by the authorities. The case in its facts differs essentially from every case relied on to sustain the judgment. The coal vein which the plaintiff below leased to the defendant was undeveloped, and the defendant was to open a mine therein. The lease contained the following clause:

"And the said lessee covenants and agree to mine and ship from the premises aforesaid not less than 75,000 gross tons of coal per year (after the first year of this lease), and to pay royalty on 75,000 gross tons per year, whether mined or not, and as much more as is practicable, unless prevented by strikes, riots, or other unforeseen calamity, or by fire or water, or by

troubles or faults in the coal seams. And the said lessee agrees to pay to the said lessor ten cents per gross ton on all said coal mined and shipped."

The lease provided for monthly settlements for royalties. Soon after its date (January 5, 1891) the defendant took possession, and at large expense opened a mine, which produced in the year 1891 about 7,000 tons of coal. Near the end of that year marketable coal ran out. For several months thereafter the defendant continued to drive the entry through the bad material which the seam had developed, but, not being able to obtain marketable coal by reason of "troubles or faults in the coal seams," the defendant early in 1892 abandoned the mine. The defendant paid to the plaintiff the stipulated royalty on all the coal it had taken out. After the defendant had abandoned mining operations, the plaintiff, with the defendant's acquiescence, took possession of the mine, and during the remainder of the year 1892 carried on operations in the mine, endeavoring to find marketable coal. He claimed to have reached good coal eventually, and about the end of the year 1892 or beginning of 1893 requested the defendant to resume mining operations. The plaintiff did not demand this as a matter of right, nor did he by word or act signify that he regarded the abandonment of mining operations by the defendant as wrongful or without good cause. He made no demand for royalties, nor any demand whatever upon the footing of the lease. Apparently he acquiesced in the defendant's abandonment of mining operations as justifiable in the circumstances and under the terms of the lease. The first intimation he gave of his intention to hold the defendant to performance was after the expiration of the 10 years term of the lease. Then, on March 23, 1901, he brought this action. He sued to recover (and the claim was allowed) the sum of $7,500 for each of the last nine years of the lease, with interest. The judgment in his favor was for the sum of $86,586.34, which actually included $7,500 and its interest for the year 1892, when, indisputably, marketable coal was not obtainable from the premises, and during most of which year the plaintiff was in possession of the premises, endeavoring to reach such coal.

The defendant below insisted there and contends here that the plaintiff, by his conduct and silence, had estopped himself from setting up such a claim as he sued for; that his course of conduct, both active and passive, had been such as to induce the belief that he had acquiesced in the defendant's abandonment of mining operations as justifiable, and that he did not intend to claim minimum royalties; that he had so misled the defendant that the latter had not taken steps to get out the 67,500 tons of coal involved in this suit while it had the right to do so, and that the plaintiff had thus secured to himself the whole of this coal. The defendant's position, in my judgment, was well taken upon the indisputable facts. By his course of conduct and intentional concealment of his purpose during a period of nearly eight years, the plaintiff lulled the defendant into a sense of security. In view of the circumstances, good faith required the plaintiff to move in assertion of this claim, or to make some sign of his purpose to assert the claim, before it was too late for the defendant to do anything to avert loss. There is no rule more necessary to enforce good faith than that which compels a person to abstain from asserting claims which he has induced others to suppose he would not rely on. Dick-

erson v. Colgrove, 100 U. S. 578, 581, 25 L. Ed. 618. It is a well-recognized general principle that where, by the course of conduct of one party entitled to the performance of certain terms, the other party has been led to believe, as a man of average intelligence, that such performance will not be required until it has become too late to perform, or until to insist on performance would work material injustice, the person who has so conducted himself is barred from asserting the right he had. Bigelow on Estoppel (5th Ed.) 660. Equitable estoppel is available as a defense in an action at law. Kirk v. Hamilton, 102 U. S. 68, 78, 26 L. Ed. 79. Here the defense of estoppel arose upon the undisputed facts. It inhered in the case as a question of law, independently of the defendant's third point, which particularly brought this defense to the attention of the court. I think the defense of estoppel should have been sustained by the court below, and that the failure to do so is reviewable here.

Upon the question of the measure of damages the court below, it seems to me, erred. The plaintiff has recovered the full price of 67,500 tons of coal still in place, and which he now owns absolutely. This, I submit, is not right, under the peculiar facts of this case. The just measure of damages applicable here is the one laid down by the Supreme Court of Pennsylvania in the analogous cases of Cherry v. Miller, 1 Pittsb. Leg. J. 98, and Lyon v. Miller, 24 Pa. 392, and recognized in Kille v. Reading Iron Works, 141 Pa. 440, 21 Atl. 666. That measure of damages is compensation for the injury the plaintiff has sustained by the defendant's alleged breach of its covenant. In Cherry v. Miller the trial court instructed the jury that the stipulated royalty was the measure of damages for all the limestone the defendant should have quarried under his lease. In reversing the judgment the Supreme Court of Pennsylvania said: "This is certainly wrong, for it gives to the plaintiff more than a compensation for the injury, by giving him full payment for limestone that is still his own." In Lyon v. Miller, that court said: "The coal in the mine was certainly worth something. As matter of law the court was bound to consider it as possessing some value. It was, therefore, proper to direct the jury to ascertain the value, and to deduct it from the stipulated rate." These cases have never been overruled. They furnish, I think, the fair rule for the assessment of damages here, whether we regard the terms of the lease or the plaintiff's course of conduct.

The learned judge below thought that upon the question of the measure of damages this case was ruled by Powell v. Burroughs, 54 Pa. 329. But there the lessee had the right to terminate the lease on the 31st of December in any year by giving three months' notice, and he did not exercise that option, but held on to the premises. This was a controlling circumstance. A like distinguishing feature is found in Gilmore v. Ontario Iron Co., 86 N. Y. 455. In Timlin v. Brown, 158 Pa. 606, 28 Atl. 236, the court held that the contract was a sale and absolute grant of the coal in place, and not a license to mine. This, too, was the ground of the decision in Lehigh & Wilkes-Barre Coal Co. v. Wright, 177 Pa. 387, 35 Atl. 919. But the contract involved in this case is a coal-mining lease. The defendant's right to mine expired at the end of the term, and the unmined coal now belongs to the plaintiff.