## Timlin *v.* Brown et al., Appellants.

[Marked to be reported.]

*Mines and mining—Royalty—Coal lease—Sale of coal.*

Where the lessor in a coal lease sells to the lessee all of the coal in the land described in the lease, at a certain minimum royalty per year for a term of years, and both parties know of the existence of workable and marketable coal in the land, although they do not know the quantity of coal, the fact that the coal is' exhausted before the end of the term will not relieve the lessees from the payment of the minimum royalty for the years subsequent to the exhaustion of the coal.

A coal lease provided that the lessees should have the right to mine coal for ten years, paying one half cent per bushel royalty. The lessees were to mine ten thousand bushels each year, but to have the right to mine as much more as they chose. In case they failed to mine ten thousand bushels each year, they agreed to pay a royalty on ten thousand bushels. The lessees mined coal for seven years, when the coal seam ran down to less than one foot in thickness, and they ceased operations. *Held*, (1) that the contract was the sale of the coal, and not a mere license to mine; and (2) that the lessees were liable for the minimum royalty until the expiration of the ten years.

*Redelivery in workmanlike condition—Damages.*

In the above case it was provided that the lessees should give up the mine at the end of the term "in a good, workmanlike condition." The lessees, when they began work, put up a small derrick to raise the coal from the bottom of the shaft; this method was continued for two years, when it was abandoned, and a slope was adopted. The shaft was of no further use except as an air shaft. The defendants removed the derrick. *Held*, that the derrick in no way affected the "workmanlike condition" of the mine, and that the lessees were not liable in damages for its removal.

Argued Oct. 3, 1893. Appeal, No. 28, Oct. T., 1893, by defendants, Thomas Brown and J. L. Hunter, from judgment of C. P. Clarion Co., Aug. T., 1892, No. 235, on verdict for plaintiff, E. A. Timlin. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Assumpsit for royalties alleged to be due on coal lease, and for damages for not surrendering coal mine in good workmanlike condition.

At the trial, before CLARK, P. J., it appeared that the agreement in writing upon which suit was brought was as follows:

" This agreement made and concluded this first day of April, A. D. 1882, between E. A. Timlin, of Beaver township, county of Clarion, state of Pennsylvania, party of the first part, and Thomas Brown and J. L. Hunter, of the same residence, of the second part.

" Witnesseth, That the said Timlin for and in consideration of one dollar lawful money, to him in hand paid by the said Brown and Hunter, the receipt whereof is hereby acknowledged, has leased to them for the term of ten years from this date, for the purpose of mining, digging and excavating the coal contained thereon, all that certain piece or parcel of land situated in Beaver township, county and state aforesaid, all that piece of land lying on the north side of the state road belonging to said Timlin, containing fifteen acres more or less ; said Timlin reserves two or three acres where buildings stand.   Said Brown and Hunter agreed to pay as royalty for coal the sum of one half cent per bushel for all coal taken from said lease ; the said royalty to be paid monthly, each and every month.   And it is further agreed that said Timlin is to have all the coal he may use at his own house for the cost of digging the same ; but said Brown and Hunter are to pay no royalty on same.   And the said Brown and Hunter agrees to give said Timlin two hundred bushels of slack each and every year, free of charge ; said Timlin agrees to charge no royalty on the slack if legally screened. And the said Brown and Hunter agrees to take out at least ten thousand bushels of coal each and every year, and as much more as they choose.   In case the said Brown and Hunter fails to get out the amount before stated, they agree to pay a royalty on ten thousand bushels each and every year.   The said Brown and Hunter agree that they will not use said lease or land for any purpose than that of mining and drawing the coal taken from said lease ; and the said Timlin is to have full control of the land for any other purpose he may want to use it for.   And the said Brown and Hunter agrees to keep and give up the mine or bank in a good workmanlike condition.   In case the said Brown and Hunter do not fulfill and comply with the conditions of this lease, this agreement is null and void and of no effect, and said Timlin is to enter upon and take possession of the same."

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows:

" [Then as to the derrick that was there : We think whatever the cost of the derrick itself is, and the putting of that shaft in repair by taking the débris out, is about all the plaintiff should be entitled to—whatever the evidence shows that to be. So far as the ropes and the cars or the cables are concerned, he is not entitled to recover for them ; the defendants were not bound to leave them there, they had a right to take them away ; they had the same right to take them away that they had (to take) their boiler and engine ; and as far as we can go in that case is, to say that whatever the damages would be to place a derrick there sufficient for the purpose of drawing up the coal out of that shaft, and the putting of that shaft in repair, is all the plaintiff ought to recover in this case.] [1] . . . .

" [Under their covenant in this agreement the defendants agree to pay as royalty for coal the sum of one half cent per bushel for all coal taken from said lease. That royalty was to be paid monthly. They further agree to take out at least ten thousand bushels of coal each and every year and as much more as they choose. Then comes this further covenant: 'In case said Brown and Hunter fails to get out the amount before stated ' (that refers to the ten thousand bushels per year) 'they agree to pay royalty on ten thousand bushels each and every year.' We think, gentlemen, that under the wording of this contract, taking into consideration the evidence that has been adduced before you, the defendants are obliged to pay royalty to the amount of ten thousand bushels per year, according to the terms of their contract.] " [2]

The court, citing Wharton v. Stoutenburgh, 46 N. J. L. 151, continued:

" [So we think the covenant contained in this agreement was just as absolute as the one in the case we have just cited, and that is this: 'In case said Brown and Hunter fails to get out the amount before stated, they agree to pay royalty on ten thousand bushels each and every year.'] " [3]

Defendants' points were among others as follows :

" 1. That the contract of lease between the plaintiff and defendants must be construed as relating to the coal known to exist on the premises leased at the time said contract was executed, and the defendants were not bound to experiment in

searching for coal in other veins, or at other points of the same vein, where there was not a reasonable prospect of obtaining coal in paying quantities. *Answer :* We refuse this point, if we are correct in our construction of this contract." [4]

" 4. If the defendants used reasonable diligence and prosecuted mining coal from the vein known to exist at the time of making contract of lease until the same was exhausted or reduced to a thickness rendering the mining of the same of greater value than the coal when mined and removed to the pit's mouth, the plaintiff cannot recover from the defendants for the non-prosecution of mining in said vein." Refused. [5]

Verdict and judgment for plaintiff for $126.40. Defendants appealed.

*Errors assigned* were (1–5) instructions, quoting them.

*W. L. Corbett, Don C. Corbett* with him, for appellants.— Fixtures erected by lessees for trade purposes are personal property and may be levied on by execution against such lessees and also are removable by such lessees at any time within the terms of their leases : Voorhis v. Freeman, 2 W. & S. 116 ; Pyle v. Pennock, 2 W. & S. 390 ; Lemar v. Miles, 4 Watts, 330 ; VanNess v. Pacard, 2 Peters. 146 ; White's Ap., 10 Pa. 252 ; Shell v. Haywood, 16 Pa. 530 ; Piper v. Martin, 8 Pa. 211 ; Mitchell v. Freedley, 10 Pa. 198 ; Harlan v. Harlan, 20 Pa. 303 ; Coleman v. Lewis, 27 Pa. 291 ; Heffner v. Lewis, 73 Pa. 302 ; Vail v. Weaver, 132 Pa. 363 ; Watts v. Lehman, 107 Pa. 106 ; Seeger v. Pettit, 77 Pa. 437 ; Hill v. Sewald, 53 Pa. 271.

When rent is payable in the shape of royalty on minerals in the soil, no royalty is payable when no minerals are found. And a covenant to work a mine cannot be enforced if it turn out that the mine is exhausted : 1 Whart. Cont. §§ 298, 300 ; Ridgeway v. Sneyd, Kay, Eng. 627 ; Clifford v. Watts, L. R. 5 C. P. 577 ; Walker v. Tucker, 70 Ill. 527 ; 1 Benj. Sales, pp. 94, 95, par. 76, 77.

In Wharton v. Stoutenburgh, 46 N. J. L. (17 Vroom) 151, the agreement was different from the case in hand, in that the defendant covenanted that he " would pay or cause to be paid to the plaintiff the sum of sixty cents for every ton of 2240

pounds of iron ore mined and carried away from said premises; that defendants should and would mine, or pay for two thousand tons of iron ore per year;" ·and further the undertaking was one of prospecting for ore, as ore was not known to a certainty to exist on the lease. In the present case there is noth· ing in the contract showing that the parties were contracting on an uncertainty. At the time the contract was executed the vein had been discovered.

*John W. Reed, Harry R. Wilson* and *Wm. A. Hindman* with him, for appellee.—In this case there is an absolute covenant or undertaking, expressed in plain, unambiguous words, to pay a fixed minimum rental, and it is a well-settled principle of law that it is no defence to an action founded upon the breach of such a covenant that the mine had become exhausted or that it could no longer be worked at a profit to the lessee: Ford v. Cotesworth, L. R. 4 Q. B. 134; Hills v. Sughrue, 15 M. & W. 253; Bute v. Thompson, 13 M. & W. 487; McDowell v. Hendrix, 67 Ind. 513; Wharton v. Stoutenburg, 46 N. J. L. 151; 3 A. & E. Enc. L. 900; 1 Whart. Cont., p. 440, par. 298.

If defendants wanted to be relieved from payment of the minimum rental fixed in the lease, even under their construction of the contract, they should have terminated the lease by a surrender of the same to plaintiff: 15 Sup. Ct. Canada, 650; Gilmore v. Ontario Iron Co., 86 N. Y. 455.

The first assignment is immaterial, and if this court should determine that an error had been committed in the court below in this particular, no harm having resulted therefrom, the judgment would not be reversed on that ground: Pardee v. Orvis, 103 Pa. 451; Worrall v. Pyle, 132 Pa. 529.

*W. L. Corbett, Don C. Corbett* with him, for appellants, in reply.—The cases cited by defendants' counsel, Kemble Iron Co. v. Scott, 15 W. N. C. 220; McCahan v. Wharton, 121 Pa. 424, and Muhlenberg v. Henning, 116 Pa. 138, do not sustain the ·contention that the rental clause is of an " absolute character " ·or fixed rent.

Gilmore v. Ontario Iron Co., 86 N. Y. 455, does not sustain plaintiff's contention. In that case the lease was for the exclusive possession of twenty-five acres of land, with a house and

barn thereon erected, for the purpose of mining ore for a term ; giving the lessee the right to all the ore therein, and he agreeing to take eight thousand tons per year.   Possession was taken in pursuance of lease, and it was held that he was bound to surrender the possession or pay the rent.   In the present case no possession is given lessees except for the purpose of mining and drawing the coal taken therefrom.

OPINION BY MR. JUSTICE DEAN, December 30, 1893 :

Timlin, the plaintiff, was the owner of fifteen acres of land. Brown, one of defendants, was mining coal on land adjoining, and believed the seam extended under the fifteen acres; he opened negotiations with Timlin, which resulted in a parol agreement giving him the right to mine.   A written agreement was entered into between Timlin and Brown and Hunter, which, although dated April 1, 1882, does not appear to have been formally executed until the close of the year.

The contract, as first agreed upon with Brown alone, was for the right to mine for a term of five years from April 1, 1882, at a royalty of one cent per bushel, with a minimum of 5000 bushels annually; after sinking the shaft, Brown took Hunter in partnership with him; the first contract was then canceled, the one sued on executed, and dated the same as the first, the royalty being reduced to half a cent per bushel, the term extended from five years to ten, and the minimum annual output raised from 5000 to 10,000 bushels.   It provides : (1) That Brown & Hunter shall have the right to mine under the whole fifteen acres for ten years from the first of April, 1882.   (2) They shall pay monthly to Timlin a half cent per bushel royalty. (3) Timlin to have coal for use in his own house at cost of digging, but to be paid no royalty on that coal.   (4) Timlin to get 200 bushels slack coal annually free of charge, but to be paid no royalty on the slack.   (5) Brown & Hunter, as a minimum, to mine 10,000 bushels each year, but to have the right to mine as much more as they choose.   (6) In case they fail to mine 10,000 bushels, they agree to pay for 10,000 bushels. (7) Brown & Hunter agree to give up the mine at the end of the term in good workmanlike condition.

In June, 1882, Brown sank a shaft about twenty-four feet, and struck about twenty-seven inches of coal; he drifted off

from the bottom of the shaft 250 feet and worked out rooms; the mine was thus operated for about two years, when, as he alleges, the roof became dangerous, and he abandoned the shaft for mining purposes; he then ran down a slope at another point, reaching coal at a short distance from where he had ceased working in the drift. From this slope defendants mined coal up to 1st of April, 1889, when the last settlement was made between them. The defendants alleged at the trial that the coal seam had then run down to less than a foot in thickness, and in consequence they ceased operations; Brown, however, admits that subsequently, on November 11, 1889, he assigned the contract to one Case, and there is evidence that some mining was done under it in 1890.

The plaintiff's demand was for the minimum royalty, $50.00 per year, for the three years from April 1, 1889, the date of last settlement, up to April 1, 1892, the end of the ten years term; also for 450 bushels of slack not delivered, worth three cents per bushel; in addition, damages for removing the derrick at the shaft, and suffering the shaft itself to fall in, were demanded.

The court instructed the jury, that, under their contract, defendants were liable for the minimum royalty, $50.00 per year, for the last three years of the term. This instruction is the error alleged in appellants' 2d, 3d, 4th and 5th assignments. It is argued that, under the contract, if defendants prosecuted their mining operations until the seam had become so thin it could no longer be mined at a profit, they were released from their covenant to pay. This brings us to a construction of the contract.

It was a sale of the coal in place under the fifteen acres, at the price of a half cent per bushel, to be paid monthly as the coal was mined, with right to a term of ten years in which to mine and remove it; they further agreed to mine at least 10,000 bushels each year, but, in case they failed to do so, then they agreed to pay a royalty on 10,000 bushels. That is, the contract was a sale of all the coal under the fifteen acres for the minimum price of $500; if there were more than 100,000 bushels mined within the ten years, half a cent a bushel was to be paid on the excess in addition to the $500.

The grant is absolute of all the coal on the tract; the minimum and maximum prices are fixed absolutely. It is not a

mere license to mine.   This stipulation in the contract, " In case the said Brown & Hunter fails to get out the amount before stated, they agree to pay a royalty on 10,000 bushels each and every year," fixes, without regard to contingencies, the liability to pay.   Not only is this the obvious meaning of the contract from its words, but the evidence shows the parties themselves must have so understood it.   The first contract provided only for a five years term and a minimum of 5,000 bushels annually, but after the shaft had struck a workable seam at a slight depth, the first contract was canceled and the one in suit, doubling the minimum and term, was made.   Presumptively, there was no uncertainty in the mind of either party about the existence of workable and marketable coal in the fifteen acres; and subsequent operations, for seven years, showed the correctness of their judgment; even then, defendants assigned the lease to Case, who mined under it the eighth year. There is nothing in the contract indicating any intention to modify or relieve the defendants from their absolute obligation to pay on the contingencies of the mine proving unprofitable, or of exhaustion of the coal before the end of the term; the plaintiff protects himself against selling too cheap by stipulating, in addition to the $500, for half a cent a bushel on the excess above 100,000 bushels, but defendants do not protect themselves from buying too dear, by stipulating for a deduction should the quantity fall short of 100,000.   This is not the case of parties dealing under a mutual mistake as to the existence of the subject of a contract, where afterwards it was proved to have had no existence, as in the authorities cited by the learned counsel for defendants; here workable coal under plaintiff's land did exist; defendants bought it at a fixed price; neither knew nor could know the exact quantity; defendants, in effect, say they were mistaken in their estimate of the quantity; instead of ten years work, as they thought, they took out all it was profitable to mine in seven or eight; but the existence of the coal was undoubted, the quantity alone was problematical. Defendants were willing to pay at least $500 absolutely for it; the plaintiff stipulated for more money if it should turn out there were more bushels than estimated.

The cases of Kemble Iron Co. *v.* Scott, 15 W. N. 220 ; McCahan *v.* Wharton, 121 Pa. 424 ; and Muhlenberg *v.* Henning,

116 Pa. 138, are not in point. In each of these cases, the cov-
enant for a minimum annual payment was, in view of the words
of the contract, the subject of it and the surroundings, not un-
qualified. In Kemble Iron Co. v. Scott, supra, the existence
and quality of the ore were both uncertain when the contract
was entered into ; the case came into this court by appeal from
a judgment in the court below on judgment for want of a suf-
ficient affidavit of defence; the affidavit averred there was
neither quantity nor quality ; the judgment was reversed and
the case directed to be submitted to a jury. In McCahan v.
Wharton, supra, the contract was to prospect and dig for ore,
and as soon as found in sufficient quantity to justify shipping,
then in no event to pay a less royalty than fifty cents per ton
on twenty-five hundred tons each year. Sufficient ore to justify
digging and shipping was not found ; this was held to be a good
defence to the demand for the annual minimum ; the manifest
intent of the parties was to make the liability subject to the
contingency of finding a sufficient quantity to justify shipping.

In Muhlenberg v. Henning, supra, the covenant was to mine
clean, merchantable iron ore ; the lessees for nine months made
diligent search and expended a large amount of money, and
failed to find either the quantity or quality of ore specified;
they alleged, that, on report of their failure to the lessor, a
suspension of the work was consented to by him. The late
Justice CLARK, delivering the opinion of this court, said : " The
lessees were bound to prosecute the work without delay. . . .
If, however, it was established by actual effort, that at the time
of the contract there was no ore in the land of the kind con-
tracted for, it cannot be pretended upon any fair and reasonable
construction of the contract that the lessees, nevertheless, were
bound for the royalty, for the payment of the royalty was un-
doubtedly based on the assumption of the parties that ore of the
quality existed there."

In all these cases, the existence of the subject of the contract
was unknown or uncertain, or, if it existed, the quality could
only be determined by actual use. In the case before us, at
the date of the contract the quantity was as well known as it
could be at that time,—no man ever yet knew how many bushels
or tons of coal were under a tract of land until he mined it out;
faults and clay veins may exist, which cut out the seam for some

part of the area; it may not be persistent in thickness; may rise higher or thin down. But the existence of workable marketable coal under this land had been demonstrated by the lessees in sinking the shaft. The only element of uncertainty— the quantity—they took the risk of, by an unqualified covenant to pay a fixed minimum sum. The contract is like unto that in Jervis v. Tompkinson, 1 H. & N. 195, where the lessees, knowing a salt mine, entered into a contract to mine 2000 tons of salt every year, or pay for the deficiency. It was held immaterial, in view of the unqualified covenant, whether the salt could be profitably mined, or whether it had, during the continuance of the contract, become exhausted.

We think the learned judge of the court below put upon this part of the contract the proper construction, and defendants' assignments of error to this portion of the charge are overruled.

The court further instructed the jury as follows: " Then as to the derrick that was there; we think that whatever the cost of the derrick itself is, and the putting of that shaft in repair by taking the débris out, is about all the plaintiff should be entitled to—whatever the evidence shows that to be." This constitutes the subject of appellants' first assignment of error. The undisputed evidence is, that defendants, when they commenced work, put up a small derrick to raise the coal from the bottom of the shaft; this method was continued for two years, when it was abandoned and the slope adopted. The shaft was of no further use except as an air shaft; the derrick, then, was wholly useless, and defendants had a right to remove it. While, to a certain extent, the preservation of this opening for ventilation was probably necessary to operating the mine, and would be covered by their covenant to " give up the mine in a good workmanlike condition," under no reasonable construction were they obliged to leave there a derrick which had been abandoned more than five years before, and a wholly different method of raising the coal substituted. A derrick in no way affected the " workmanlike condition " of a slope mine, and therefore plaintiff had no well-founded claim for its value. It was error to submit this evidence to the jury.

It is argued by appellee's counsel that the jury did not allow plaintiff for this item, and consequently the instruction did de-

fendants no harm. We cannot certainly know this. The claim, excluding the derrick, was for three years' royalty and the value of 450 bushels of slack coal, amounting altogether to $163.50; the verdict was for $126.40. There was conflicting evidence as to defendants' liability for the slack, which was for the jury ; then, defendant Brown testified to quite a number of items for which he claimed credit, such as coal got by mother of plaintiff, and actual payments made to Timlin, the whole amounting to more than $50.00. All these credits were disputed by plaintiff. The jury may have allowed a part of these, and also have put a much less value on the derrick than that fixed by plaintiff. It is enough to say the error may have wronged defendants.

For that reason, the first assignment of error is sustained, the judgment is reversed, and a v. d. n. awarded.