# Turner v. Lehigh Valley Coal Company, Appellant.

*Lease—Coal lease—Consideration—Rental—Purchase money—Covenant—Mines and mining.*

Where an instrument in writing, designated by the parties as a lease, demises and leases all coal lying under a particular tract of land with the right to mine coal until all the merchantable coal has been mined out and exhausted, and the instrument provides for the payment of a minimum sum per year, and a royalty on tonnage over an amount designated, and also for the delivery by the lessee to the lessor at the chutes of a certain number of tons of coal each year, the amount of coal to be delivered at the chutes is as much a part of the consideration, whether the contract is a sale or lease, as the money payment, or the royalties. In such a case the lessee is not relieved from the annual delivery of the coal by the death of the lessor, nor is he relieved by the fact that the lessor accepted for years the minimum royalty, there being no mining operations, without making any demand for the coal contracted to be delivered at the chutes.

Argued Feb. 25, 1907. Appeal, No. 30, Jan. T., 1907, by defendant, from judgment of C. P. Luzerne Co., May T.,

102 TURNER *v.* LEHIGH VALLEY COAL CO., Appellant.

1906, No. 152, for plaintiff on case stated in case of March Turner v. Lehigh Valley Coal Company. Before RICE, P. J., PORTER, HENDERSON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Case stated to determine whether the defendant was liable to the plaintiff for the value of ninety tons of coal which the plaintiff claimed should have been delivered to him by the defendant. Before WHEATON, J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in entering judgment for plaintiff.

*John M. Darling*, of *Woodward, Darling & Morris*, for appellant.—The coal to be furnished under this lease could not have come out of the demised premises, for none has been mined, but, if it could have, it would not be rent because part of the land itself and not issuing out of it.

The covenant does not run with the land, because it does not provide for an act to be done on the land or connected with the land : Spencer's Case, 1 Smith's Leading Cases, *68 ; Keppell v. Bailey, 2 Myl. & K. 517 ; Vernon v. Smith, 4 Eng. Com. Law Rep. 3 ; Wade v. Merwin, 28 Mass. 280 ; Lazarus's Estate, 145 Pa. 1.

*George K. Powell*, with him *S. J. Strauss*, for appellee.—In the coal lease on which the suit now before the court arose, the purchase money consisted of the payment of minimums in money and an additional payment of eighteen tons of coal each year. There is nothing in the lease which requires the coal thus to be paid to come from the land covered by the lease. It will be just as good a payment if it comes from a point 100 miles distant. All that is required of the lessees is that they shall deliver to the lessor during the entire period of the lease eighteen tons of coal a year at its chutes.

OPINION BY HEAD, J., October 7, 1907 :

The contract, the construction of which gives rise to this litigation, is evidenced by a written instrument, under seal, dated March 1, 1869. By its terms the first parties, then the

undisputed owners in fee of the land therein fully described, "demised, leased, and to mine let," unto the second party and his assigns, "all the coal lying and being in, under and upon" the said described land; "together with the right to mine and remove the said coal through openings not located upon the surface of said land," etc. If this instrument, rightfully construed, established between the parties the relation of lessor and lessee, then "the term" of the lease is expressed in the following language, viz.: "To have and to hold the said coal and surface and the estates, rights and privileges hereby demised, with the appurtenances, unto, etc., until all the merchantable coal upon the said premises available by proper, skillful and careful workings shall have been mined out and exhausted." If on the other hand the contract is to be interpreted as effecting a sale and conveyance of the coal, then the instrument is in substance a deed and the clause quoted is the "habendum" "determining what estate or interest is granted by the deed." It was further provided that the money compensation to be paid for the fraction of a year ending January 1, 1871, should be $1,800 and that each year thereafter at least that sum should be paid, but if more than 9,000 tons of coal were mined in any one year, the excess was to be paid for at the rate of fifteen cents per ton in addition to the minimum payment already specified. There were many provisions which it does not seem now necessary to quote, except the following one out of which the question now before us arises, viz.: "Ninth. The said parties of the first part shall be furnished annually during the continuance of this lease, with eighteen tons of prepared coal to be delivered at the chutes free of charge." What, then, was the essential nature of this contract? Did it create an estate in fee—subject to forfeiture for a breach of condition subsequent—in all the coal in and underlying the land described; or did it but demise an estate therein for some "term" less than the estate of the first parties? Did it constitute the relation of vendor and vendee between the parties and make the compensation to be paid by the one "purchase money"; or did it make the one a lessor and the other a lessee and the thing of value, to be paid or delivered by the latter, rent? Were these questions directly involved they would be conclusively answered by the cases of Scranton

v. Phillips, 94 Pa. 15, and Sanderson v. Scranton, 105 Pa. 469.

Whilst the paper before us is called by the parties a "lease," and contains many provisions properly applicable only to such an instrument, yet it contains others, and they going to its very substance, that proclaim the intention of the parties to have been a sale of all the coal in place and make this contract not distinguishable from those construed by the Supreme Court in the cases cited. In the latter of these Mr. Justice CLARK says:

"What is termed a mineral lease is frequently found to be an actual sale of a portion of the land; it differs from an ordinary lease in this, that although both convey an interest in land, the latter merely conveys the right to its temporary use and occupation, whilst the former conveys absolutely a portion of the land itself. It is one of the essential properties of a lease that its duration shall be for a determinate period, shorter than the duration of the estate of the lessor, hence the estate demised is called a 'term' and necessarily implies a reversion. If the entire interest of the lessor is conveyed, in the whole or a portion of his land, the conveyance cannot therefore be properly regarded as a demise, but as an assignment. "Upon examination of this instrument we find that the lease is not of the mine, with its approaches and appliances, and the right to use, occupy and operate the same, but it is a lease of 'all the coal beneath the surface of the tract,' with the right 'to mine the coal and remove the same.' . . . The duration of the interest is not for any determinate period of time; it is not for years, for life, or at will; . . . . that is to say, it is a lease of the coal until no coal remains. In what respect, then, does this transaction lack the essential qualities of an actual sale?"

From this it would seem to follow logically that the consideration named in the contract, the thing of value moving from the grantee to the grantor, was, legally speaking, purchase money. And this would be true not only of that portion of the consideration which was to be paid in money, but also to the eighteen tons of coal to "be furnished annually during the continuance of this lease." Purchase money means money or anything that is money's worth: 23 Am. & Eng. Ency. of

Law (2nd ed.), 465.  Presumably the undertaking to furnish
this amount of coal annually was, pro tanto, just as valuable to
the grantor as the covenant to pay money, and just as effective in
inducing the execution of the contract.   The obligation to fur-
nish it was, therefore, not different in kind nor in binding force
from the more important because, and only because, more valu-
able covenant to pay money.   This obligation to furnish coal
was to last and remain in force "during the continuance of this
lease," or in the words of the paper itself defining the dura-
tion of the estate created by it, "until all the merchantable
coal upon said premises available by proper, skillful and care-
ful workings shall have been mined out and exhausted."   As
it is agreed in the case stated "that the defendant company
(which has succeeded to the rights and obligations of the origi-
nal grantee or lessee) has continued to pay the minimum royal-
ties under said lease (payable in cash) but has never mined
any coal from the premises," it would follow that the liability
to furnish the coal is still an existing one unless destroyed by
the death of the original grantor on the theory we shall di-
rectly advert to.

In the recent case of Coolbaugh v. Lehigh & Wilkes-Barre
Coal Co., 213 Pa. 28, it was held, construing a contract sub-
stantially like the one now before us, that, as to the coal remain-
ing unmined at any particular time, the lessor still retained the
legal title so that it would be bound by the lien of a judgment
against him ; that by a judicial sale following an execution is-
sued on such judgment such title would be divested, and there-
after the sheriff's vendee would have the right to receive the
rent or royalties reserved in the lease.   Of course, if the in-
strument now under consideration be regarded as a lease, pure
and simple, and the consideration to be paid annually, under its
terms, as rent, the transfer of the title to the demised premises
would carry with it the right to the receipt of the rent thereaf-
ter accruing.   It matters not, therefore, whether we regard the
annual furnishing of eighteen tons of coal as part of the pur-
chase money or part of the rent; in either case the present
plaintiff, having succeeded to the ownership of the undivided
one-third of the estate of the original grantors or lessors, has
become lawfully invested with the right to receive that propor-
tion of the annually accruing rent or purchase money.

But, it is argued, the right to have, each year, the eighteen tons of coal provided for in the contract was personal to the original lessors, and was extinguished by their death. To this we cannot assent, because it would be an unwarranted injection into the body of the instrument of a limitation destructive of the expressed intent of the parties. Their agreement, as they wrote and executed it, bound the lessee to furnish and deliver the coal annually, not for any fixed number of years, nor during the lives of the lessors, or the survivor of them, but " during the continuance of this lease," to wit : " until all the merchantable coal . . . . shall have been mined out and exhausted." It is conceded by the defendant that the lease still continues to exist, and it regularly pays, and has paid, the money part of the annual consideration therein provided for. We can discover no reason why it should not pay the remaining portion of the entire consideration stipulated for in the single contract, the continued existence and binding force of which it fully recognizes. But it is also argued that the plaintiff has lost his right to recover in this action because he did not, each recurring year, specially demand the delivery of the coal. To this it may be answered that the case stated avers no such fact, and we are not at liberty to assume it. If the defendant intended to rely on the proposition that no demand was made, that fact, if it be a fact, should have appeared. Not being stated, for the purposes of this case it does not exist. But why was the plaintiff obliged to make a special demand for the performance of this particular portion of the contract ? The obligation of the defendant was affirmative, to furnish to the lessors the coal " to be delivered at the chutes free of charge." The plaintiff was not required to spur the defendant to the performance of this covenant any more than to the discharge of its other obligation to pay certain moneys each year, and it would hardly be contended that the right to recover an annual payment was lost because the plaintiff made no special demand that it should be paid. We think the learned court below was right in entering judgment for the plaintiff, and the assignment of error thereto must be overruled.

Judgment affirmed.