# Steele *v.* Maher, Appellant.

*Mines and mining—Coal lease—Minimum royalty—Exhaustion of coal —Forfeiture.*

1. Where an instrument in writing called a coal lease grants, conveys, demises and leases coal for a fixed term of years, provides for certain mining rights, a certain royalty per ton, a certain minimum money royalty per year, and forfeiture if the minimum royalty is not paid, and both parties have full knowledge of the existence of coal in the tract leased, and the lessee has not been deceived or misled by the lessor as to the existence of the coal or its quantity, the lessee will not be relieved from the payment of minimum royalty for the unexpired term after the coal has been virtually exhausted, and mining operations have ceased.

2. While parties may contract that on a default the lease may become void at the option of either party, yet such intent in the agreement must be so plain as to be unavoidable in order to sustain such a construction.

3. A clause in a lease that it shall be null and void on failure of the lessee to pay rent or keep other covenants, is not self-operating so as to make the lease void ipso facto by the default, but being a provision for the benefit of the lessor may be enforced or waived at his option.

4. Where there has been a default by the lessee mere silence or inaction on the part of the lessor will not render the lease void. He may, on default made, demand and compel the payments. By doing so he elects to continue the lease.

Argued May 13, 1908. Appeal, No. 5, April T., 1909, by defendant, from judgment of C. P. Indiana Co., March T., 1903, No. 208, on verdict for plaintiffs in case of P. W. Steele, Admin-

istrator of Sarah J. Miller, deceased, et al., v. Thomas Maher. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit to recover minimum coal royalties. Before TELFORD, P. J.

The facts are stated in the opinion of the Superior Court.

When Thomas Maher was on the stand, he was asked this question:

"Q. Had you any knowledge of the coal in the Freeport vein at that time, in what is known as the Upper Freeport vein?"

Counsel for plaintiffs ask the purpose of the question.

Mr. Barron: The purpose of this question is to show by this witness—and we make this offer—that at that time this witness was not acquainted with the conditions with respect to the mining of coal in the Upper Freeport vein and especially with respect to the mining of coal in this particular locality embraced in what is known as the Sarah Miller tract, and that he entered into the agreement in question here not knowing of these conditions and having no knowledge of either the quantity or the quality of the coal embraced in the tract in question.

Mr. Taylor: Objected to as incompetent, irrelevant and immaterial. It is also objected to for the further reason that this testimony is incompetent to affect the contract on which this suit is brought.

The Court: It appears to us that in this case the grant is absolute and exclusive, without regard to the contingencies. The lessee, the defendant, took his risk as to quantity or expense of operation and agreed to pay a definite, fixed minimum price or royalty for each year during the term after the expiration of the first year.

Under the authority of Timlin v. Brown, 158 Pa. 606, the objection to the character of evidence proposed must be sustained. The objection is therefore sustained. Exception. [1]

To which ruling counsel for the defendant except, and a bill of exceptions is sealed to the defendant.

Mr. Banks: We propose to show by the witness on the stand, to be followed by the testimony of other witnesses to be called

on behalf of the defendant, that the defendant was not ac-
quainted with the premises or the coal thereunder embraced in
the agreement at the time of entering into the same. Further,
we propose to show that all the coal was mined and marketed
under said land that was marketable. That the defendant paid
the royalties up until November 7, 1901, and at that time gave
notice to the plaintiffs that the coal under the premises had be-
come exhausted and that he elected to deliver up the lease to
the plaintiffs and abandon further operation: and that he has
done nothing toward operating the mines on the premises since
that time. This for the purpose of showing that all the coal
under the premises that could be taken out has been taken out
and that the coal under the premises has been exhausted, and
that the plaintiffs have been paid for the royalties up until the
abandonment of the mine by the defendant and have had notice
of the abandonment; and to relieve the defendant from paying
further royalties.

Mr. Taylor: The offer is objected to as incompetent and ir-
relevant.

The Court: The objection is sustained. [2]

Mr. Barron: The defendant offers to prove that the defend-
ant was not acquainted with the premises or the coal thereunder
embraced in the agreement at the time of entering into the
same other than that the face of the bluff of said tract showed
certain outcroppings of coal. That the coal at that time had
not been tested to the knowledge of the defendant nor did the
defendant have the right to make said tests upon the surface
above said coal, nor could he make any test except driving
through said bluff where was the outcropping aforesaid. That
the defendant having had no experience in mining in that seam
of coal or in that locality and no knowledge of the coal under
said tract other than as aforesaid, entered into said agreement
wholly upon the strength of the quantity and quality of the
coal that was supposed to exist under said tract and that could
with profit be mined therefrom. That the defendant with others
operated the mine on said premises for a period of ten years, at a
total loss of $10,000. That he and others employed at a great
expense the largest number of workmen that could possibly

be used in said mine. That he and others mined whatever coal it was possible to mine until rock rolls, faults, and the thinness of the seam prevented them from proceeding further. That the business of mining said coal was conducted in an economical and business like manner. Also to prove by other witnesses who had charge of the work in the mine that the coal has been mined until exhausted. Also by experts in mining that they have examined the premises embraced in the agreement and that said premises do not contain coal in sufficient quantities to enable the defendant or other persons to mine or take away the minimum quantity of coal specified in the lease to be mined. That said mine at no time could be worked for enough to pay the royalties as they became due. That all the coal that can be mined without great loss to the operators has been mined and that the defendant and others have done all that can reasonably be expected to prove that the coal is exhausted from the premises.

That by reason of these facts the defendant found it necessary to abandon said premises and gave notice to the plaintiffs in December, 1901, of the abandonment and the reasons making the abandonment necessary.

Mr. Taylor: Objected to as irrelevant and incompetent.

The Court: The objection is sustained.

To which ruling counsel for defendant except, and a bill of exceptions is sealed to the defendant. [3]

Mr. Banks: We would like the court to state the reasons for overruling the offer.

The Court: The offer is overruled for the reasons stated in sustaining the objection to the first proposition of proof of the defendant.

Mr. Keener: The defendant proposes to prove by the witness on the stand and others, as follows:

1. That owing to said coal having been exhausted the defendant availed himself of the clause of forfeiture in said agreement and made default in payment and gave notice to the said plaintiffs that he abandoned and surrendered said lease and elected to take advantage of said forfeiture.

2. That at the time of said forfeiture the said defendant

surrendered the buildings on said premises to said plaintiffs, as provided for by the terms of said agreement.

3. That the defendant has fully performed all the covenants and conditions relating to the forfeiture of said agreement on the part of said defendant.

Mr. Taylor: Objected to as incompetent and irrelevant. The lessee under the contract in suit could not take advantage of the forfeiture clause, it being alone for the benefit of the lessors.

The Court: The objection is sustained.

To which ruling counsel for defendant excepts, and a bill of exceptions is sealed to the defendant. [4]

The court charged in part as follows:

[By an article of agreement bearing date of November 7, 1890, the plaintiffs in this case conveyed to the defendant the coal underlying a certain tract of land situated in Harrison township, Allegheny county, in the following terms, substantially: "The said parties of the first part for and in consideration of the covenants and agreements hereinafter mentioned, have granted, conveyed, demised, leased and let, and by these presents do grant, convey, demise, lease and let for the period of twenty-one years from the date hereof, to the said party of the second part, his heirs, executors, administrators and assigns, the exclusive right and privilege of developing and mining all the coal in and underlying that certain tract of land, situated," etc.

In our view this clause discloses a manifest intention to sell, and to buy, the coal. A contract which is in its terms a demise of all the coal underlying a tract of land, with the unqualified right to remove the same, is a sale of the coal in place.] [5]

[This being a sale of coal in place, as we have stated, there is nothing that we can find in this contract that relieved the defendant from the obligation to pay the minimum royalty whether the coal is mined or not. Nothing is stated about the exhaustion of the coal or the expensiveness of mining in the contract. It was the agreement that $400 minimum was to be paid annually during the life of the contract; and to this amount

the plaintiffs are entitled from November 7, 1901, to November 7, 1902, which is admittedly unpaid.] [6]

[In our view of this contract the clauses relating to forfeiture must be construed as for the benefit of the lessors. They are here, however, resisting the forfeiture. They alone, in our judgment, can enforce it.] [7]

[In this view of the case it becomes our duty to direct a verdict for the plaintiff for the amount of royalty claimed, $400, with interest from the time it was due, November 7, 1902, amounting in all to $530.

For this amount you will find a verdict for the plaintiffs.] [8]

Verdict and judgment for plaintiffs for $530. Defendant appealed.

*Errors assigned* were (1–4) rulings on evidence, quoting the bill of exceptions; (6–8) above instructions, quoting them.

*J. N. Banks* and *Frank Keener*, with them *McKee & Mitchell* and *A. J. Barron*, for appellant.—The failure to pay the minimum royalty of $400 yearly was to render the lease "absolutely null and void." This would indicate that the parties contemplated that if the minimum royalty of $400 was not paid annually the right of Maher should cease, and the lease revert to the lessors, and Maher be relieved from payment of further royalties: Kemble Iron Co. v. Scott, 15 W. N. C. 220; Muhlenberg v. Henning, 116 Pa. 138.

Whether or not a forfeiture clause in an agreement is for the benefit of the lessors alone depends upon the terms of the forfeiture. Parties to an agreement may make a contract that will relieve either party from liability, and it would seem from this agreement that a failure to pay on the part of Maher was to render the contract "absolutely null and void," and that neither party should thereafter be held longer by it, and the improvements on the premises should become the property of the lessors: Bodine v. Glading, 21 Pa. 50; Vito v. Birkel, 209 Pa. 206; Neill v. Peale, 4 Atl. Repr. 830.

*D. B. Taylor* and *R. A. McCullough*, with them *R. L. Ralston, G. M. Hill* and *John M. Ralston*, for appellees.—The agree-

ment in this case is almost identical with the contract in the well-known case of Timlin v. Brown, 158 Pa. 606. See also Boyer v. Fulmer, 176 Pa. 282; Hosack v. Crill, 18 Pa. Superior Ct. 90.

OPINION BY RICE, P. J., February 26, 1909:

This was an action of assumpsit brought to recover the annual minimum royalty of $400 alleged to be due for the year ending November 7, 1902, under a sealed instrument, called a coal lease, executed and delivered in 1890, and duly recorded in 1891. The grantors in this instrument were the owners by tenancy in common of the land. One of them and the personal representatives of the two others, who died after the execution of the instrument, were the plaintiffs in the action, and the grantee in the instrument was the defendant.

The defendant set up by his offers of testimony two grounds of defense: first, that he and others mined and paid for whatever coal it was possible to mine until rock rolls, faults and the thinness of the seam prevented them from proceeding farther; secondly, that having paid all the royalties that fell due prior to the virtual exhaustion of the coal and the cessation of mining, he abandoned the lease and premises, gave notice thereof, as well as of his intention to avail himself of the forfeiture clause, to the owners, and made no further payment of royalty, whereupon, by virtue of the forfeiture clause, the agreement became void and his obligation to pay further royalties ceased.

This appeal is from the judgment on verdict in plaintiffs' favor for the full amount of their claim.

The words of the granting clause of the instrument, so far as material to this discussion, are "have granted, conveyed, demised, leased and let, and by these presents do grant, convey, demise, lease and let for the period of twenty-one years from the date hereof, to the said party of the second part, his heirs, executors, administrators and assigns, the exclusive right and privilege of mining and developing all the coal in and underlying that certain tract of land." Then, after describing the land, the instrument proceeded to grant the right of taking, removing and transporting the coal, and certain other surface

rights, including the right of ingress and egress into, upon and over the premises at certain points, and to release all and every claim for damages caused to the land by the opening and operating the mines.

In consideration whereof, the grantee covenanted and agreed to pay "ten cents per ton for all coal mined after passing over a one and one-half inch screen, the slack and fine coal passing through said screen not to be paid for, weights to be ascertained from books of the weighmaster at the tipple and statements of the amount of coal mined to be rendered . . . . monthly, and the royalty to be paid every three months." He also covenanted to commence the development of the coal within six months and to continue operations without unnecessary delays. Then follow the covenants upon which the case turns.

"After the period of one year after the commencement of operations the party of the second part hereby agrees and binds himself to mine during each and every year of the continuance of this lease not less than four thousand tons of coal and to pay . . . . each and every year of the term of this lease the full sum of four hundred dollars ($400.00) as royalty whether the amount of coal mined in each year would amount to a royalty of that much or not."

In immediate connection with the foregoing is the covenant or agreement that "a failure on the part of said second party . . . . to mine not less than four thousand tons (4,000) in any one year or to pay unto said first parties . . . . the full sum of four hundred dollars ($400.00) in any one of the years of the term of this lease, payable as hereinbefore provided for, shall render this lease absolutely null and void, and shall at once forfeit this lease and all rights and privileges therein."

The tract of fifty-six acres fronted on the west side of the Allegheny river, and it is an undisputed fact that the vein of coal known as the Freeport vein was exposed by outcrop on the tract. Moreover, upon a small tract immediately north of the adjoining tract a coal bank in the same vein had been opened and worked before this agreement was made. Still farther, it is admitted by appellant's counsel that pursuant to the agreement he entered upon the premises, opened up and developed

the tract, and mined coal therefrom until 1899, when he sold his interest to the Freeport Coal Company, and that from that time until December, 1901, the Freeport Coal Company carried on the mining and paid the minimum royalties.

It will be seen from the foregoing statement of facts, that, like Timlin v. Brown, 158 Pa. 606, this is not the case of parties dealing under a mutual mistake as to the existence of the subject of a contract, where afterwards it was proved to have had no existence. Again, like that case, the parties presumably knew at the time they contracted, that there was coal underlying the tract. It is true the defendant offered to testify that he entered into the agreement without knowing the quantity or quality of the coal in the tract, but he does not deny that he had the knowledge which his eyes must have given him, if he looked at the outcrop and at the open mine in the same vein near by. Nor does he allege that he was deceived, misled or put off his guard by any act or representation of the other parties to the agreement. The parties did not contract upon a mere supposition or surmise as to the existence of coal in the tract, but with actual knowledge of that fact. As in the case cited, so here, the existence of the coal was undoubted, and the only element of uncertainty was the quantity. Admitting the truth of all the defendant offered to prove, there was no such difference between the conditions existing at the time these two instruments were executed as detracts in the slightest degree from the applicability of that decision in the construction of the agreement before us. Nor is there any such difference between the substantial and controlling terms of the two instruments. There, as here, the right to mine and remove the coal was limited to a fixed term; in that case the grantees agreed to take out at least 10,000 bushels each and every year, and as much more as they might choose, and in this case the grantee bound himself "to mine all the coal underlying all the demised premises," and after the first year, to mine during each and every year of the continuance of the lease not less than 4,000 tons; in that case the grantees agreed to pay as royalty one-half cent per bushel for all coal taken, in this case the grantee agreed to pay ten cents per ton; in that case the grantees agreed to keep and give up the mine or

bank in good workmanlike condition, and in this case the gran-
tee agreed to leave proper ribs to support entries until all the
coal should be mined.  In the case cited the controlling cove-
nant read: "In case the said Brown and Hunter fail to get out
the amount before stated, they agree to pay a royalty on ten
thousand bushels each and every year;" while in this case the
grantee agreed to pay "each and every year of the term of this
lease the full sum of four hundred dollars as royalty whether
the amount of coal mined in each year would amount to a roy-
alty of that much or not."  Speaking of the former covenant
Justice DEAN said: "This stipulation in the contract . . . . fixes
without regard to contingencies the liability to pay;" and later
on in the opinion: "There is nothing in the contract indicating
any intention to modify or relieve the defendants from their
absolute obligation to pay on the contingencies of the mining
proving unprofitable or of the exhaustion of the coal before the
end of the term."  It is important to notice also that the earlier
cases, cited by appellant's counsel in this case, of Kemble Iron
Co. v. Scott, 15 W. N. C. 220; McCahan v. Wharton, 121 Pa. 424,
and Muhlenberg v. Henning, 116 Pa. 138, were fully reviewed
by Justice DEAN, and distinguished in a manner which serves as
well to distinguish them from the case before us, and to render
further discussion of them by us superfluous.  But it is con-
tended that Timlin v. Brown was modified by the later case of
Boyer v. Fulmer, 176 Pa. 282.  It is apparent, however, that
the Supreme Court did not intend the latter case to have that
effect, for Mr. Justice GREEN said at the outset of his opinion:
"The learned court below ruled this case upon the authority of
Timlin v. Brown, 158 Pa. 606.  If the obligation of the defend-
ant were the same as the obligation of the lessees in that case
the ruling would be correct."  In the still later case of Bannan
v. Graeff, 186 Pa. 648, Timlin v. Brown was distinguished from
that case, but the correctness of the conclusion there reached,
that the instrument created an absolute obligation to pay a
fixed rental or royalty throughout the whole term, was dis-
tinctly recognized.  The reasoning of the opinion of Justice
DEAN in Timlin v. Brown fully vindicates that conclusion, and
by no amount of justifiable ingenuity is it possible to reconcile

with it a conclusion in the present case that the obligation to pay ceased upon the virtual exhaustion of the coal. We conclude, therefore, that the learned judge below was right in holding that the case in hand was ruled by that case.

In the recent case of Denniston v. Haddock, 200 Pa. 426, followed in Coolbaugh v. Lehigh & Wilkes-Barre Coal Co., 213 Pa. 28; s. c., 218 Pa. 320; Gallagher v. Hicks, 216 Pa. 243, and Hollenback Coal Co. v. Lehigh & Wilkes-Barre Coal Co., 219 Pa. 124, the present chief justice, speaking of a conveyance of coal in place by a lease for a limited term, said: "Whether it would be better to call such an instrument accurately what it certainly was at common law, a lease without impeachment of waste, or to endeavor to reconcile all the decisions by calling it a conditional sale, is not necessary at present to discuss. The point to be noted is that the rules applicable to sales are not to be applied indiscriminately to such instruments but each is to be construed like any other contract by its own terms." We are not so much concerned here with the nature of the estate or interest acquired by the defendant or with the name that is to be given to the instrument, or with the question whether the stipulated royalties are or are not the purchase money of the coal in place, as with the nature and extent of the obligation the defendant assumed. See Turner v. Lehigh Valley Coal Co., 34 Pa. Superior Ct. 101. Grant that this was not strictly speaking a sale, we would be constrained to hold, even in the absence of the decision in Timlin v. Brown, that construing the instrument by its own terms, and having regard to the conditions existing at the time it was executed, the clear intention was to create the absolute obligation, which the words of the controlling covenant plainly import, to pay $400 in each and every year of the term whether coal should be mined or not.

We are unable to agree with the appellant's counsel that the forfeiture clause gave him the right to extinguish his obligation as to future royalties by merely ceasing to mine or to pay, abandoning the premises and giving notice thereof to the grantors. While parties may contract that on a default the lease may become void at the option of either party, yet such intent in the agreement must be so plain as to be unavoidable, in

Vol. xxxviii—13

order to sustain such a construction: Wills v. Manufacturers' Natural Gas Co., 130 Pa. 222. The rule has been established by that and many succeeding cases, that a clause in a lease that it shall be null and void on failure of the lessee to pay rent or keep other covenants, is not self-operating so as to make the lease void ipso facto by the default, but being a provision for the benefit of the lessor may be enforced or waived at his option· Westmoreland, etc., Natural Gas Co. v. DeWitt, 130 Pa. 235; Cochran v. Pew, 159 Pa. 184; Bartley v. Phillips, 179 Pa. 175; English v. Yates, 205 Pa. 106. The rule was distinctly recognized and reaffirmed in Vito v. Birkel, 209 Pa. 206, a case cited by appellant's counsel. In Wheeling v. Phillips, 10 Pa. Superior Ct. 634, we said: "Where there has been a default by the lessee mere silence or inaction on the part of the lessor will not render the lease void. He may, on default made, demand and compel the payments. By doing so he elects to continue the lease." This is precisely what the plaintiffs did in the present case.

The judgment is affirmed.