# Corona Coal & Coke Company, Appellant, *v.* Dickinson et al.

*Mines and mining—Coal lease—Difficulty of performance—Construction—Royalties—Change of character of vein.*

1. Inconvenience or the cost of compliance, though they might make compliance a hardship, cannot excuse a party from the performance of an absolute and unqualified undertaking to do a thing which is possible and lawful.

2. As a general rule a lessor is not relieved from liability by subsequent developments or changes in the property.

3. Where the terms of a coal lease provide for the payment of a minimum royalty to the lessors by the lessee, the fact that the vein of coal becomes thinner and more difficult to work and the coal of less value, does not excuse the lessee from the duty to pay the minimum royalty provided by the lease, and, in an action of replevin for property seized by landlord's warrant for nonpayment of minimum royalties due under the terms of the lease, the jury were properly directed to find a verdict for the defendant for the amount of royalties so due.

Argued March 23, 1918. Appeal, No. 9, Jan. T., 1918, by plaintiff, from judgment of C. P. Clearfield Co., Sept. T., 1917, No. 267, on verdict for defendants in case of Corona Coal & Coke Company, a Pennsylvania Corporation, v. Margaret A. Dickinson, Mary G. Dickinson, W. R. Dickinson, Julia Shugart, Anna N. Dickinson, Bernice Dickinson, S. B. Isenberg, Agent for William R. Dickinson Heirs, and Ira C. McCloskey, Bailiff. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Replevin for property seized by landlord's warrant. Before BELL, P. J.

The opinion of the Supreme Court states the case.

Verdict for the defendants for $4,662.63 and judgment thereon.

*Errors assigned* were certain rulings on evidence, the

action of the court in directing a verdict for the defendants, and in refusing binding instructions in favor of the plaintiff.

*Roland D. Swoope,* for appellant.

*A. R. Chase,* for appellee.

OPINION BY MR. JUSTICE WALLING, June 11, 1918:

This is an action of replevin for property seized by landlord's warrant for royalties on a coal lease. In 1908 defendants, as owners of a tract of 250 acres of land in Clearfield County, made a lease to plaintiff of a certain vein of coal therein, known as "B" seam, which provides, inter alia, "Third. The lessee shall proceed at once to open and develop said coal and shall commence shipping coal on or before the first day of April, A. D. 1909, and shall ship during the year, to be computed from said date, not less than 20,000 gross tons of coal, and the next following year 20,000 gross tons; and each and every year thereafter during the continuance of this lease not less than 25,000 gross tons, until all of the merchantable and workable coal in said seam, in or under the above described lands, shall be exhausted, and in default thereof, the said lessee agrees to pay to the said lessors the royalty on said minimum amount of coal agreed to be mined at the aforesaid rate, the same to be payable at the end of each period of three (3) months, subject, however, to a proportionate deduction in said minimum amount of coal agreed to be mined as aforesaid when a general labor strike or other causes beyond the control of said lessee shall prevent mining operations. It is understood that if rent or royalty shall be advanced and paid on the minimum quantity for coal not mined, the lessee shall have the right to mine the coal thus paid for, next two succeeding years, without again paying royalty therefor." And also: "Ninth. It is covenanted and agreed that this lease shall continue until all

the merchantable and workable coal in said 'B' seam or vein has been mined, as hereinbefore provided." The plaintiff (lessee) took possession of the property and proceeded to mine and remove the coal, and for the first five years paid the defendants (lessors) the full minimum royalty, although that was slightly more than for the amount of coal actually mined. As the operation extended, the vein became thinner and the coal more dirty which added to the work of its removal and to the difficulty of mining the stipulated minimum quantity. Of this condition plaintiff made repeated complaints to defendants, and, after the five years, in making settlements paid the royalty only on the amounts actually mined, which was much less than the minimum. Defendants retained the payments but never agreed to treat them as in full, or to waive any rights under the lease, or to modify any of its provisions. This continued for about three years when defendants issued the warrant in question to collect the difference between the minimum royalty and the amount actually paid, which amounted to $4,662.63; then the lessee brought this replevin. The trial court held that defendants were within their rights and directed a verdict in their favor. Plaintiff appealed.

We find nothing that calls for reversal. Plaintiff is still mining the vein of coal and has never surrendered the lease nor offered to do so, and there is yet therein a large amount of merchantable workable coal, as about one-half of the tract has not been mined. There is no guaranty in the lease as to the thickness of the vein or quality of the coal. During but two months of the entire time have mining operations on the premises ceased and for them plaintiff has received credit. We agree with the court below that so long as the mine is in operation the minimum royalty must be paid, and that the fact of the vein being lighter in some places, or of the coal containing an unusual amount of dirt, rendering it difficult to secure miners to work therein, is no defense. The parties did not stipulate as to those contingencies. By

the terms of the lease the only available excuse is a general labor strike or other cause beyond the control of the lessee which prevents mining operations, and there has been no such cause. There is no allegation that it is not practical to mine the coal as it is, in fact it is being mined, and the conditions complained of do not prevent it. No fraud is alleged and there is no ambiguity in the contract. Had the vein turned out richer than expected it would have been plaintiff's gain; that it turned out poorer is its loss, but does not excuse performance of the contract. The lessors could not repudiate it because of the increase in value of unmined coal, neither can the lessee because of the increased difficulty in or expense of mining it. "Inconvenience or the cost of compliance, though they might make compliance a hardship, cannot excuse a party from the performance of an absolute and unqualified undertaking to do a thing that is possible and lawful. Parties sui juris bind themselves by their lawful contracts, and courts cannot alter them because they work a hardship. The rights of the parties must be measured by the contract which they themselves made. A contract is not invalid, nor is the obligor therein in any manner discharged from its binding effect, because it turns out to be difficult or burdensome to perform": 6 R. C. L. p. 997; and see Timlin v. Brown, 158 Pa. 606; Lehigh Valley Coal Co. v. Everhart, 206 Pa. 118; Steele v. Maher, 38 Pa. Superior Ct. 183; Shafer v. Senseman, 125 Pa. 310. "As a general rule a lessee is not relieved from liability by subsequent developments or changes in the property": 18 R. C. L., Section 99 (p. 1192).

The lessors' acceptance of the royalty on the amount actually mined was not a waiver of the balance; nor did it constitute an estoppel: Tustin v. Philadelphia & Reading C. & I. Co., 250 Pa. 425; Hillside Coal & Iron Co. v. Sterrick Creek Coal Co., 239 Pa. 359; Powell v. Burroughs, 54 Pa. 329. A debtor cannot discharge himself of a clear legal liability for a fixed amount by pay-

ing a part of it.  Mere delay of suit or neglect to rigorously exact money is not evidence of waiver: Atkinson, Assignee, v. Walton, 162 Pa. 219, 222; and see Teufel v. Rowan, 179 Pa. 408.  There is no ambiguity in the lease, hence the fact that the lessee paid the entire minimum royalty for the first five years and thereafter declined to do so is not important as tending to show the parties' own construction of the contract.  Plaintiff's various offers of evidence as to the dirty condition of the coal, the difficulty of securing miners by reason thereof, etc., if admitted would have constituted no defense to the lessors' claim for the minimum royalty, therefore their rejection was not error.  There is here an abundance of unmined workable coal of merchantable quality, and no question as to the exhaustion of the vein or of the lessee's inability to mine the minimum amount by reason thereof, hence the authorities cited as to that do not apply.

The assignments of error are overruled and the judgment is affirmed.